In the Matter of the Petition of Karl and Beatrice Perl to Adopt a Baby Boy, a Minor, Name Unknown. Karl Perl and Beatrice Perl, Petitioners-Appellants, v. Baby Boy, a Minor, Name Unknown, Defendant-Appellee.

Gen. No. 48,763.

First District, Third Division.

January 9, 1963.

Elmer Gertz, of Chicago (Sidney Z. Karasik, of counsel), for appellants.

Edward J. McGinnis, of Chicago, for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

This appeal is taken from a final order and judgment of the County Court of Cook County denying the prayer of Karl and Beatrice Perl, petitioners, to adopt

a certain baby boy, name unknown, and ordering the petitioners to deliver custody of the child to the Cook County Department of Public Aid.

In February 1961 the petitioners filed a petition in the County Court of Cook County seeking to adopt the baby boy. Their petition contained the usual averments as to the capacity and fitness of themselves as adopting parents, and alleged that the child was born August 14, 1960 at a place unknown and that all information relating to the natural parents was unknown and could not be ascertained by diligent search. The petitioners further alleged that the unknown father and mother of the said child abandoned and deserted the child for a period in excess of three months immediately prior to the filing of the petition in the cause, and that the child had been abandoned and deserted and therefore the natural parents were unfit and not entitled to the custody of the child. On the same date an order was entered in the County Court which, among other things, awarded custody of the minor child to the petitioners, appointed a guardian ad litem for the child, and deprived the parents of all natural rights to the child. The order also appointed the Cook County Department of Welfare to investigate the fitness of the petitioners to adopt the child and whether the child was a proper subject for adoption. The record does not include the report by the agency on these matters. No question is raised but what the Perls were fit persons and ably equipped to care for the child. Personal service was had on the child. There was also service by publication.

Up to this period in the proceedings the case was an ordinary one in which the petitioners seek to adopt a "waif." The guardian ad litem filed an answer to the petition asking strict proof of the matters therein alleged. At this period new elements developed in the case.

431

On August 14, 1960 a boy child was born in Berlin, Wisconsin to a fifteen-year-old unwed mother named Tina Davis. Tina remained in the Wisconsin hospital for five days and then by arrangement with Tina's mother, Mrs. Noel Davis, the child was taken by her cousins, Marge and Joseph Strazzanti, of Chicago. It was Tina's understanding that the baby "would go to Chicago and be put up for adoption." The District Attorney of Green Lake County, in which Berlin is located, where the baby was born, became interested in the case. Apparently there was a suspicion that the baby was going to be a pawn in the so-called baby "black market." An information was filed in that county against Strazzanti and proceedings were started leading to his extradition. Communication was made by the District Attorney to Governor Nelson of Wisconsin, who in turn communicated with Governor Kerner of Illinois.

The County Court set the matter for a full hearing, which commenced on May 26, 1961. Present at that hearing were Joseph Kerwin, Director of Court Service Division, Cook County Department of Welfare and Public Aid; Elmer Gertz, who was substituted for the original attorney for the petitioners; Richard A. Purcell, Assistant State's Attorney of Cook County; Charles Wildermuth, District Attorney for Green Lake County, Wisconsin.

In the meantime in Wisconsin Tina Davis had been by the Wisconsin court, on the application of the Wisconsin District Attorney, declared a neglected child and placed, subject to the County Department of Public Welfare of the State of Wisconsin, in a foster home. Later the proceedings against Strazzanti were dismissed in the State of Wisconsin.

In the adoption proceedings in the County Court the State of Wisconsin filed no petition asking that the custody of the child be given to the appropriate agency of that State. Apparently the hearing which

432

we are considering was for the purpose of attempting to determine the identity of the child which the Perls sought to adopt. The Perls had one natural child and one other adopted child.

At the conclusion of the hearings which had been adjourned from time to time, the County Court on December 4, 1961 entered a judgment denying the prayer of the petitioners to adopt "said baby boy." The Court in its judgment further vacated its order entered February 1, 1961 which placed the child in the custody of the petitioners pending hearing on their petition to adopt, and the petitioners were ordered to deliver the custody of the child to the Cook County Department of Public Aid. The latter part of the order was stayed until the disposition of the petitioners' appeal. A brief was filed in this court by the guardian ad litem.

The evidence with reference to the identity of the child is in sharp conflict. On that question the trial court made no finding. From the record it does not appear that there was sufficient evidence to sustain any finding with reference to the identity of the baby. On that question in this court the petitioners and the guardian ad litem are in substantial agreement. The hearing was a full hearing. Wildermuth, the District Attorney for Green Lake County, Wisconsin, testified, as did the nurse who was present at the birth of a baby on August 14, 1960 in Berlin, Wisconsin. The court in its judgment made no findings of fact, nor did it state any reason for denying the petition, but entered the order of denial without comment. From the record it appears that there were various discussions among counsel in the hearing in the trial court. From those discussions it can be assumed that the trial court felt, and with some reason, that the case was tainted with the traffic in babies, sometimes called the "black market" in babies. However, any such assumption by the trial court is not substantiated by

any evidence. The testimony of all the parties is that there was no money either paid or agreed to be paid by the petitioners or anyone else for the adoption of the child.

There was testimony in the record by Dr. Leon Robin, a practicing physician in Chicago specializing in pediatrics, that he was the physician for the petitioners and had attended their other children. He testified that the petitioners are responsible and excellent parents, that they care for their children well and provide for them, and constituted in his opinion a "loving household." He also testified that had an infant a few days old been placed in the home of persons desiring to adopt him, where love developed on both the part of the child and the parents with whom he was placed, to remove such child from that environment after a period of approximately one year would shock the child emotionally and affect his personality afterwards and at a future date, and that there would be a permanent psychological trauma. Dr. Russell Levy also testified. He was a clinical psychologist with an extensive practice in the City of Chicago, and his work principally was with young children through the age of adolescence. He testified that he examined the child sought to be adopted and interviewed the petitioners, and that the child seemed happy and showed real affection and identification with the petitioners. He further testified that if the child would be removed from the only home which he has known it would have a marked deleterious effect upon the child; that it would be in the nature of a trauma; that it would negatively alter his normal growth pattern, mentally, and conceivably produce a social metamorphosis from the normal pattern.

In his brief in this court the guardian ad litem argues that the County Court did not have jurisdiction and hence would have no right to enter a judgment in favor of the petitioners. He bases that argu-

ment to a great extent on the fact that in the petition filed by the petitioners they stated that the names of the parents of the said child are unknown and after due and diligent search cannot be ascertained, and that the affidavit filed at the time of and in support of the service by publication was to the same effect. It is interesting to note that the hearing was apparently conducted by the County Court in an attempt to determine the identity of the child. In support of that attempt the court had the aid of the investigative powers of the sovereign states of Illinois and Wisconsin. An Assistant State's Attorney of Cook County and the District Attorney of Green Lake County, Wisconsin were present in court, and yet in spite of that there was no evidence produced which would enable a court to determine the identity of the child then before the court.

In 1 ILP Adoption, sec 2, it is stated:

"The purpose of the Illinois statutes authorizing the adoption of children is to provide homes for children who may be so unfortunate as to have none and to promote the interests of society by giving good homes to children who are without proper parental care. Primarily, the practice is beneficial to the adopted child. However, it is not only beneficial to those immediately concerned, but likewise to the public, and it tends to conserve the best interests of society and the state." (See cases cited.)

In Hopkins v. Gifford, 309 Ill 363, 368, 141 NE 178, 180, it is said:

"The adoption of friendless, dependent or orphan children tends to conserve the best interests of society and the State. All States of the Union now have adoption statutes. The right of adoption is not only beneficial to those immediately

435

concerned, but likewise to the public. It is not the duty of courts to bring the judicial microscope to bear upon such a case in order that every slight defect may be magnified, so that a reason may be found for declaring invalid the proceedings under a beneficent statute of this character. Courts are more inclined to abandon the old rule of strict construction and to place a fair and reasonable construction on adoption statutes, to the end that the adoption may be upheld and the assumed relationship sustained. There must be a substantial compliance with the provisions of statutes conferring jurisdiction, but the construction of such statutes is not to be so narrow or technical as to defeat the intention of the acts or the beneficial results where all material provisions of the statutes have been complied with. (Kennedy v. Borah, 226 Ill 243; Flannigan v. Howard, 200 id. 396; 1 Corpus Juris, 1373.)"

In In re Petition of Simaner, 15 Ill2d 568, 575, 155 NE2d 555, 559, the court says:

"Appellants next assert that the adoption statutes being in derogation of common law, must be strictly construed, especially where the effect of adoption would be to deprive a natural parent of his child. Hence appellants contend that the court lacked jurisdiction under a strict construction of the statutes. A short answer to this contention is that section 7–3 of the Adoption Act provides that 'This Act shall be liberally construed, and the rule that statutes in derogation of the common law must be strictly construed shall not apply to this Act.' (Ill Rev Stats 1957, c 4, § 7–3.)"

The court cites with approval McConnell v. McConnell, 345 Ill 70, 177 NE 692, as holding that the prevailing

rule in Illinois is that a substantial compliance with the jurisdictional requirements of the adoption statutes is sufficient. In 2 Am Jur2d Adoption, sec 61, we find the statement: "In determining whether to grant a decree or order for the adoption of a minor child, the interests and welfare of the child are of primary and paramount consideration. On this point there is unanimous agreement. . . ." In Cooper v. Hinrichs, 10 Ill2d 269, 275, 140 NE2d 293, 297, the court said: "In adoption cases in this jurisdiction, although we have insisted upon compliance with the jurisdictional requisites, the polestar in all such cases has always been the welfare and best interests of the child." Also see In re Petition of Kollman, 10 Ill App2d 336, 134 NE2d 629 (Abst), where the court again states the rule that the interests and welfare of the child must take precedence over all other considerations, and the court points out that the decision of the court must be reached in the light of the entire picture before it, saying: "It involves estimating intangibles, evaluating human beings."

In the case before us the only parties who want this child are the petitioners. No demand was made for the custody of the child by the State of Wisconsin or by the County of Cook. It would seem to be a harsh rule to say that this bit of human jetsam deposited in the arms of the petitioners out of the surrounding ocean of uncertainty should be torn away from them. They have demonstrated, as it appears in the record, their love for the child. They have given him tender care in sickness and in health. No question has been raised anywhere with reference to their character or capacity to care for the child as one of their own. Even though it can be said that the conditions surrounding the inception of the adoption may be suspicious, nevertheless it would seem that it would be utterly unfair to visit the punishment upon the head of this innocent baby. If the order of the County

Court that the child be transferred to the custody of the Cook County Department of Public Aid were affirmed, it would only mean that the child would again be put out for adoption.

■ ■ It is necessary for a court to evaluate the welfare of the child with the possibility of harm which might be done to the public or any other person. If the adoption is permitted there would be no harm done to anyone. There has been a sufficient substantial compliance with the jurisdictional requirements of the statute. The welfare of the child far outweighs any other consideration, and guided by that polestar we are constrained to reverse the judgment of the County Court of Cook County and remand the cause with directions to that court to enter a judgment giving leave to the petitioners to adopt as their own child the said minor.

Reversed and remanded with directions.

DEMPSEY, P. J. and SCHWARTZ, J., concur.