**Betty Jean Thorpe and Charles E. Thorpe, Petitioners-Appellants, v. Barbara Loraine Thorpe and Mickey Rae Thorpe, Defendants-Appellees.**

### Gen. No. 10,507.

Fourth District.

May 7, 1964.

Rehearing denied June 6, 1964.

Pree & Pree, of Springfield, for appellants.

Casey & Casey, of Springfield, for appellees.

SPIVEY, J.

This is an appeal from a decision of the County Court of Sangamon County wherein a petition for adoption was denied. The child sought to be adopted, Mickey Rae Thorpe, was returned to her natural

mother, Barbara Loraine Thorpe, also known as Barbara Loraine Wild.

In the petition for adoption filed on July 24, 1962, it is alleged that the petitioners acquired custody of Mickey Rae Thorpe from Barbara Loraine Wild on February 14, 1961; that the child is the niece of Charles E. Thorpe, co-petitioner; that the name of the child's father is unknown; that the mother of the child is an unfit person to have custody because of abandonment and desertion for more than three months preceding the commencement of the proceeding.

The defendant-appellee answered denying that she had abandoned or deserted the child and further alleging that petitioners have wrongfully withheld custody of Mickey Rae Thorpe.

Defendant was married to one Jack Wild in 1946 and was separated from him in 1953. They have not since lived as husband and wife and have never been divorced.

Petitioners assert that Barbara Loraine Wild had from the inception of their discussions with reference to the care of Mickey Rae Thorpe promised to consent to petitioners adopting the child and that she would never ask to have the child returned to her care.

Defendant on the other hand states that she had never discussed adoption with the petitioners and had never intended at any time not to resume the care and custody of her child.

The remaining facts are largely uncontroverted.

Some time in November, 1960, a discussion took place in DuQuoin, Illinois, at the home of the maternal grandmother regarding the disposition of the child which defendant was about to bear. At this conversation the defendant stated that she didn't know what she would do with the baby; that she did not have a job and no means with which to support the child; and that she was to soon undergo major surgery which

457

might require convalescence of a year to a year and a half.

In the course of this conversation it was agreed between the petitioners and defendant that the petitioners would take the child when it was born.

The child in question was born on February 5, 1961, in DuQuoin, Illinois, and brought by defendant to the home of petitioners in Pawnee, Illinois, on February 11, 1961. On that occasion defendant left with petitioners the baby's formula, some clothing, and a hospital birth certificate which stated that Mickey Rae Thorpe was born on February 5, 1961, and that the mother's maiden name was Barbara Loraine Thorpe.

When defendant left DuQuoin on this occasion to return to Pawnee she was in tears and was told by her brother either that, "If you get down the road a piece and see you can't get along without it come back and get it," or, "Sis, she will be all right, you can come and get her any time you want if you can't do without her."

One of the petitioners, Betty Jean Thorpe, testifying as to the occasion, stated that she understood the defendant was not relinquishing her claim to the baby.

Defendant was operated on on April 20, 1961, and remained in the hospital until May 11, 1961. She was required to take it easy for the next six weeks. She re-entered the hospital in August, 1961, and again on February 20, 1962.

From February 11, 1961, until the middle of March of 1963, the petitioners brought Mickey Rae to DuQuoin to visit her mother two or three times each month. The defendant, when able to find transportation, visited the child in Pawnee on several occasions. On the occasions of those visits the defendant would care for her child, sometimes for a few hours and at least on one occasion as much as two or three days.

The defendant furnished some clothing and sent Christmas and birthday presents to Mickey Rae. In July of 1962, she took out a small life insurance policy on the child. The petitioners kept defendant advised as to the child's welfare and sent photographs. Defendant also on occasion took photographs of Mickey Rae.

According to the petitioner Betty Jean Thorpe nothing was said about "custody" until about three to five months before the filing of the petition. She further states that in June or July of 1962, upon learning that the defendant intended to take Mickey Rae with her, she no longer provided any visitation to the mother. Defendant had previously, in April of 1962, written to the petitioner, Charles E. Thorpe, that she wished to have Mickey Rae back with her.

From these facts the trial court determined that defendant had neither abandoned nor deserted her child, Mickey Rae Thorpe, as alleged in the petition.

█ In adoption proceedings clear and convincing proof of the unfitness of a natural parent must be supported by evidence. (Oeth v. Erwin, 6 Ill App2d 18, 126 NE2d 526; In re Petition of Dickholtz, 341 Ill App 400, 94 NE2d 89.)

█ Likewise in such proceedings the correctness of the trial court's determination should not be disturbed unless it is palpably against the manifest weight of the evidence. (Houston v. Brackett, 38 Ill App2d 463, 187 NE2d 545; Campbell v. Fisher, 28 Ill App2d 454, 171 NE2d 810.)

The courts of this State have recognized that the General Assembly evidenced a legislative intent to distinguish between abandonment and desertion under the Adoption Act. (Stalder v. Stone, 412 Ill 488, 107 NE2d 696; In re Petition of Ekendahl v. Topol, 321 Ill App 457, 53 NE2d 302.)

The accepted definition of abandonment under the cases is as follows: Abandonment under the adoption statute means any conduct on the part of a parent which evinces a settled purpose to forego all parental duties and relinquishes all parental claims to the child. (In re Adoption of Walpole, 5 Ill App2d 362, 125 NE2d 645; Hill v. Allabaugh, 333 Ill App 602, 78 NE2d 127.)

■ Abandonment would thus imply an intention on the part of a parent to forego all parental claims by leaving a child entirely to the mercy of someone else without regard to the welfare of the child.

To our knowledge the courts of this State have not heretofore made a clear distinction between abandonment and desertion as contemplated by the Adoption Act. It would seem that any abandonment of a child by a parent would amount to desertion but every desertion of a child would not necessarily amount to an abandonment.

■ Desertion as contemplated by the Adoption Act would indicate an intention by the parent to permanently terminate custody over the child but not to relinquish all parental duties and all claims to the child.

One similarity between desertion and abandonment is that there must be an intent to desert or an intent to abandon. (Campbell v. Fisher, 28 Ill App2d 454, 171 NE2d 810; In re Adoption of Walpole, 5 Ill App2d 362, 125 NE2d 645.)

■ We cannot say from the aforesaid facts that the decision of the trial court was contrary to the manifest weight of the evidence.

■ ■ During the course of the petitioners' evidence in chief the defendant, testifying under section 60 of the Civil Practice Act, was interrogated about other children to whom she had given birth. There was an objection to this line of questioning and in

460

chambers petitioners offered to prove that the defendant had given birth since her separation from Jack Wild to some five or six children and that none were born of this marital relationship. Further offer was made to show that the defendant had consented to the adoption of these children. No ruling was requested nor made on this offer of proof.

Petitioners then asked leave to amend their petition to charge depravity to which defendant objected. There was no ruling on this objection in that the motion to amend the petition was withdrawn.

On cross-examination of defendant's testimony given on direct examination in chief she stated that she had given birth to four children in the last eleven years. That she consented to their adoptions in the years of 1955, 1956, 1958, and as to one of the four she was not sure of the time that she consented to his adoption.

At the close of petitioners' evidence they asked leave to amend their petition to include as grounds for unfitness, depravity and open and notorious adultery or fornication. This motion for leave to amend was denied.

Petitioners assign as error the Court's refusal to permit them to amend their petition to include the additional ground of unfitness.

Section 20 of the Adoption Act, chap 4, sec 9.1–20, provides that the Civil Practice Act shall apply to all adoption proceedings except as otherwise specifically provided in that Act.

Section 46(1) of the Civil Practice Act permits of amendments at any time before final judgment by adding new causes of action to enable plaintiff to sustain the claim for which it was intended to be brought.

Amendments to adoption petitions have been condoned by our Supreme Court in Stalder v. Stone, 412 Ill 488, 107 NE2d 696.

The question of paramount importance in any adoption proceeding is what will be in the best interests of the child. (Stalder v. Stone, 412 Ill 488, 107 NE2d 696; Petition of Perl, 38 Ill App2d 430, 187 NE2d 303; Section 15 of the Adoption Act, Ill Rev Stats c 4, § 9.1–15.)

In view of the fact that the welfare of Mickey Rae Thorpe was the prime consideration in the instant proceeding we find that the Court abused its discretion in not permitting an amendment to the petition to charge depravity and open and notorious adultery or fornication and to consider evidence upon those two charges of unfitness.

The offer of proof and the evidence adduced on cross-examination of the defendant should have compelled the trial court to permit the amendment and the introduction of any evidence in that respect so that a complete determination of the best welfare of Mickey Rae Thorpe could be had.

This cause is reversed and remanded with directions to permit petitioners to amend their petition for adoption and for a new trial.

Reversed and remanded with directions.

CROW, P. J., concurs in the result but not in all that is said in the opinion. SMITH, J., concurs.