*In re* INTEREST OF JAMES MORIARITY *et al.,* Minors—(MARILYN MORIARITY, Appellant, *v.* THE PEOPLE OF THE STATE OF ILLINOIS, Appellee.)

(No. 73-46; ▮▮▮▮▮▮)

Second District—October 10, 1973.

▮▮▮▮▮▮

Robert Frederickson and Donald Shriver, both of Rockford, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford, (James W. Jerz, of Model District State's Attorneys Office, of counsel,) for the People.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

The plaintiff, Marilyn Moriarity, appeals from a decree of the Circuit court of Winnebago County finding her unfit as a parent in that she had abandoned her three children. The decree further empowered the children's appointed guardian to consent to their adoptions. Several issues are presented in this appeal; however, we deem it necessary to discuss only the issue of whether the evidence in the record is sufficient to support the trial court's decree. We find the evidence insufficient.

In the spring of 1971 plaintiff was arrested. She went to the juvenile authorities of Winnebago County and requested that they keep her three children in a foster home. Subsequently, she was found guilty of forgery of two checks in the sums of $5.00 and $15.00 and after a period of incarceration in the Winnebago County jail, she was committed on September 3, 1971 to the Department of Corrections of the State of Illinois to serve a sentence of not less than one year or more than three years.

On May 12, 1971 the circuit court found the plaintiff's three children, James, aged six months, and Denise and Darlene, both two years old,

neglected minors after plaintiff had filed an appearance and consent. The court appointed the Winnebago County Juvenile Probation officer, Goldie Floberg, guardian of the three children and ordered them to remain in the foster homes they were then in, under Floberg's supervision.

Plaintiff was released on parole on June 8, 1972. Although plaintiff's parole was to have been originally served in Indiana where she had relatives, she arranged to have her parole transferred to the Rockford area so that she would be close to her children. While in the reformatory, she wrote three letters inquiring about her children: two letters to the guardian, Goldie Floberg, and one letter to the Judge who had sentenced her to the reformatory.

In her last letter to Goldie Floberg, plaintiff arranged for an appointment on June 8, 1972, the day she was to be released from the reformatory. Plaintiff failed to keep this appointment, and two weeks later she again contacted Goldie Floberg, inquired of the children, and stated that she wished to visit them. Floberg again made an appointment to have plaintiff see her but the plaintiff failed to keep this second appointment also.

Approximately one month later, plaintiff went to the Floberg Juvenile Center to either see her children or make arrangements to see them. The record is unclear as to whether this visit occurred before or after the State filed its unfitness petition on July 19, 1972. Goldie Floberg, however, told plaintiff that she could not see the children unless she obtained a court order to that effect.

Based upon these incidents occurring during the forty-one day period from June 8th, 1972, in addition to the fact that plaintiff failed to maintain steady employment and a stable residence, the State, on July 19, 1972, filed a petition to terminate her parental rights alleging that plaintiff had abandoned her children. A hearing on the State's petition was held on October 12, 1972. At this hearing Goldie Floberg testified that only plaintiff's conduct for the forty-one day period between June 8, 1972 and July 19, 1972 was considered by the juvenile probation department in its decision to have plaintiff declared an unfit parent. However, the court also heard and considered evidence relating to that period subsequent to July 19th.

This evidence revealed that plaintiff had violated the terms of her parole agreement in that she had moved her residence several times without the permission of her parole officer; drove an automobile; and failed to maintain steady employment. And undeniably more relevant to the question of whether plaintiff had abandoned her children, evidence was also heard relating to plaintiff's contact with her children during this period. On August 16, 1972, the date initially set for adjudica-

tion of plaintiff's unfitness, the court entered a temporary visitation order upon plaintiff's request and over the State's strenuous objection. The order enabled plaintiff to visit her children once a week at the County Juvenile Home. Thereafter, plaintiff visited her children six out of the nine scheduled visits prior to the October 12, 1972 hearing.

It is apparently true from the statements of the State's Attorney that plaintiff may have a "history of criminal problems and arrests." Nonetheless the hearing on her unfitness was purportedly not based on these occurrences, but upon her activities which allegedly constituted abandonment after her release from the State Reformatory for Women. Oddly enough, during the alleged 41 day period of abandonment the authorities objected to her even seeing her children.

■■■ The rights of natural parents to their children cannot be severed unless a clear and convincing case is presented in strict compliance with the Adoption Act. (*In re Walpole's Adoption* (1955), 5 Ill.App.2d 362, 125 N.E.2d 645.) The sole ground alleged in the State's unfitness petition was that plaintiff had "abandoned" her children within the meaning of the Adoption Act. (Ill. Rev. Stat. 1971, ch. 4, par. 9.1—1 D (a).) Abandonment, as that term is used within the Adoption Act, is conduct on the part of the parent which indicates a "settled purpose to forego all parental duties and to relinquish all parental claims to the child." (*Thorpe v. Thorpe* (1964), 48 Ill.App.2d 455, 460, 198 N.E.2d 743, 746; *In re Cech* (1972), 8 Ill.App.3d 642, 291 N.E.2d 21.) In considering this issue of abandonment, our courts have consistently held that the primary consideration is the intent of the natural parent. *Mateyka v. Smith* (1964), 47 Ill.App.2d 1, 7, 197 N.E.2d 157, 160; *Thorpe v. Thorpe, supra,* at 460.

Based upon the facts in the record before us, it is untenable that plaintiff intended to cast aside her parental duties after she was released from the reformatory, since those duties had been temporarily transferred to the juvenile court pursuant to the May 12th, 1971 neglect order. (*Cf. In re Deerwester* (1971), 131 Ill.App.2d 952, 267 N.E.2d 505.) Too, plaintiff's conduct during this forty-one day period does not reflect an intent on her part to relinquish all of her parental claims to her three children. During this period she made arrangements to meet with Floberg and inquired about visiting the children on two different occasions. And on one occasion plaintiff actually went to the Floberg Center to visit the children, only to be told that she needed a court order to be able to do so.

In formulating our decision, we do not deem it necessary to consider, as the trial court did, that evidence pertaining to the period following the filing of the unfitness petition. Consideration of this evidence would

only strengthen our holding; since visiting her children on six of the nine scheduled visits further negates any intent on behalf of plaintiff to abandon her children.

The State's prompt efficacious procedures in seeking to act in the best interest of its wards is laudible. In this case, however, it is readily apparent that the State's overbearing concern for efficiency has had an unjust result.

■■ For the reasons expressed above we hold that the State failed to clearly and convincingly establish that the plaintiff is an unfit parent in that she abandoned her children. Therefore, the order of the circuit court of Winnebago County, being against the manifest weight of the evidence, is reversed.

Reversed.

T. MORAN and SEIDENFELD, JJ., concur.