*In re* CAROLYN OVERTON *et al.*, Minors—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* COLENE OVERTON, Respondent-Appellant.)

(No. 72-386;

Second District—August 28, 1974.

Donald L. Shriver, of Rockford, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford (James W. Jerz, of Model District State's Attorneys Office, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

The respondent-mother Colene Overton appeals from the July 1972 supplemental decrees of the circuit court of Winnebago County which terminated her parental rights to her five minor children, and which granted to the Department of Children and Family Services of the State of Illinois (Department) the right to consent to the children's legal adoption. Colene Overton also appeals from the denial of her section 72 motion (Ill. Rev. Stat. 1971, ch. 110, par. 72) which requested the vacation of the decree adjudicating the children to be wards of the court, as neglected minors, and giving custody of the children to the Department as their guardian.

The issues raised on appeal are: (1) whether the trial court erred in finding Colene Overton an unfit mother at the hearing on the supplemental petition to terminate parental rights; (2) whether at this hearing the trial court erred in admitting into evidence statements of the minors made in an out-of-court conference prior to the hearing; (3) whether Colene Overton may collaterally attack the judgment of neglect in the original neglect hearing on the grounds of denial of substantial constitutional rights; and (4) whether there has been a denial of her constitutional or statutory rights at the original hearing.

On or about August 15, 1970, Colene Overton, who was 4 months pregnant at the time, was injured in an automobile accident. She was in the hospital for 3 weeks and was on crutches for the next 4 to 6 weeks. At the time of the accident she was the sole support of her five children, her husband having deserted her sometime earlier. She was not receiving any public aid, and, thus, had no means of providing for the children after her accident.

Consequently, on August 17, 1970, the assistant State's Attorney filed petitions under the provisions of section 2—4(1)(b) of the Juvenile Court Act (Ill. Rev. Stat. 1969, ch. 37, par. 702—4(1)(b)) to determine that the children, who ranged in age from 9 months to 8 years, were neglected minors because their environment was injurious to their welfare. Also, on August 17, 1970, the court entered a *pendente lite* order appointing the Department as guardian of the children and giving the Department custody of the children pending resolution of the neglect proceedings. Presumably, the order was entered at a hearing after proper notice was given to the respondent-mother pursuant to sections 3—5 and 3—6 of the Juvenile Court Act. (Ill. Rev. Stat. 1969, ch. 37, pars. 703—5, 703—6.) The record is silent as to whether the required hearing was held.

On the same date a summons was issued to the minor children and Colene Overton which directed them to appear on August 21, 1970, to answer the neglect petitions. The summons conformed to the statutory requirements in that it informed them of their right to counsel and their right to have counsel appointed if they could not afford one. (See Ill. Rev. Stat. 1969, ch. 37, par. 704—3(2).) The hearing was held on October 28, 1970, which was not within 30 days of the filing of the neglect petition as required by statute. (Ill. Rev. Stat. 1969, ch. 37, par. 704—2.) The record is silent as to the cause of the delay.

At the hearing on October 28, 1970, no report of the proceedings was kept, although a legal secretary took notes. These notes and the common-law record are less than adequate in providing a record of what transpired at the hearing. Both are silent as to whether the court informed Colene of her rights to counsel and appeal as required under section 1—20(1)(3) of the Juvenile Court Act. (Ill. Rev. Stat. 1969, ch. 37, par. 701—20(1)(3).) The court found the children to be neglected minors because their environment was injurious to their welfare and adjudged them to be wards of the court. The court further ordered that the children be committed to the Department of Children and Family Services of the State of Illinois as their appointed guardian.

On March 1, 1972, the assistant State's Attorney filed a petition for supplemental decrees, requesting that the Department be authorized and empowered to consent to the legal adoption of the children, thereby terminating all parental rights of Colene Overton. The assistant State's Attorney alleged that Colene was unfit to retain parental rights or custody of the children because, "(1) she has failed to maintain a reasonable degree of interest, concern or responsibility as to the children, (2) she deserted the children for more than three months next preceding the filing of the petition."

After a hearing on the issues was held on July 21, 1972, the court found that the State had proved the allegations set forth in its petition. The court entered the supplemental decree authorizing the Department, as guardian for the children, to consent to the legal adoption of the children and terminated all parental and legal rights of Colene Overton with respect to the children.

■■ Respondent Colene Overton contends the court erred in finding her an unfit mother. We agree. As we stated in *In re Interest of Moriarity* (1973), 14 Ill.App.3d 553, 556, 302 N.E.2d 491, 493, "[t]he rights of natural parents to their children cannot be severed unless a clear and convincing case is presented in strict compliance with the Adoption Act." *In re Adoption of Walpole* (1955), 5 Ill.App.2d 362, 125 N.E.2d 645; *In re Petition to Adopt Cech* (1972), 8 Ill.App.3d 642, 291 N.E.2d 21.

■■■ First, we find that the trial court did not strictly comply with the provisions of the Adoption Act in finding that Colene Overton had deserted her children within the meaning of that Act. (Ill. Rev. Stat. 1971, ch. 4, par. 9.1—1D(c).) Desertion, as used in the Act, is such conduct by the parent as to indicate the parent's intention to permanently terminate custody over the child but not relinquish all parental duties and claims to the child. (*Thorpe v. Thorpe* (1964), 48 Ill.App.2d 455, 198 N.E.2d 743; *In re Petition of Smith* (1972), 4 Ill.App.3d 261, 280 N.E.2d 770; *In re Petition to Adopt Cech, supra.*) In consideration of the question of desertion, primary consideration must be given to the intent of the parent. (*In re Walpole's Adoption, supra, Thorpe v. Thorpe, supra; Petition of Smith, supra.*) The mere fact of physical separation does not necessarily constitute desertion. (*In re Deerwester* (1971), 131 Ill.App.2d 952, 267 N.E.2d 505.) In the case before us, the court expressly stated that the question of desertion was not a matter of intent; thereby basing his decision only on the mother's physical separation from her children for a 3-month period. Accordingly, we must reverse the finding of the court that Colene Overton deserted her children as the finding was not in strict compliance with the Adoption Act.

Second, the trial court's finding that Colene Overton failed to maintain a reasonable degree of interest, concern or responsibility as to the children's welfare was not based upon clear and convincing evidence. (Ill. Rev. Stat. 1971, ch. 4, par. 9.1—1D(b).) The finding was primarily based upon the fact that from the time Colene Overton recovered from her injuries to June 1971, she visited her children only 3 times; that from June 1971 until about November 1971 she left Illinois and went to Missouri to live and did not see her children; that she sent no cards or gifts to the children; and that her paramour was a bad influence upon her children and the children disliked him.

In regard to Colene's visitation, we note that while Colene's case worker did not expressly refuse Colene's right to visit her children, he did not encourage her to visit her children. It is apparent from the record that the case worker felt it was in the best interests of the children that Colene should not visit them and that his feeling was communicated to Colene.

In regard to her moving to Missouri, we note that the move was for the purpose of starting "a new life." She wrote the Department concerning her trip, gave her new address, and informed the Department that school in Missouri began in August rather than in September. The letter also communicated to the Department Colene's concern for her children. The Department, however, never communicated with Colene while she was in Missouri concerning her move or her children. In fact, the Department waited until November 15, 1971, to inquire of the Missouri Public Aid Department concerning Colene.

In regard to gifts, we note that the one gift sent to her children was never delivered by the Department to the children.

In regard to Colene's paramour, we note that he was her only means of support and that she was dependent upon him to provide transportation as she could not drive.

The Department thus placed Colene between "Scylla and Charybdis." If Colene did not see her children frequently enough the Department was prepared to and did file a petition alleging that Colene did not show reasonable interest, yet, if she insisted upon seeing her children in opposition to the feelings of her case worker, her case worker may not have recommended the return of her children. If Colene left Rockford, it would also be evidence of her lack of interest in her children; yet, if she stayed, she would not have any reasonable expectation of ever being able to support her children and thus gain their return. If Colene stayed with her paramour, this would be evidence of lack of concern for the children; yet, if she left him, she would be without any support except public aid. Additionally, in order to steer Colene through these perilous straits, the Department gave her as her helmsman a case worker who visited her only once every 2 months, who did not respond to her letter while she was in Missouri, and who did not adequately inform Colene of the consequences of her actions.

■■ The conduct of the Department virtually insured that once Colene was separated from her children she would eventually lose them permanently. Accordingly, we must also reverse the finding of the court that Colene failed to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare as there has not been a clear and convincing case presented showing unfitness on this ground.

Because the court's judgment concerning adoption is reversed, we need not consider the other issues raised by the respondent which concern this proceeding.

Counsel for the respondent next contends that the original neglect decrees must be vacated because the court failed to inform Colene at the hearing of her right to counsel, her right to have counsel appointed if she could not afford counsel, and her right to appeal contrary to the provisions of the Juvenile Court Act (Ill. Rev. Stat. 1971, ch. 37, par. 701—20) and the due process clause of the fourteenth amendment of the U. S. Constitution.

■■ Respondent's counsel, who was not appointed until after the petition for supplemental decrees had been filed, and after the time for appeal had run out, raises this argument collaterally in a section 72 motion. (Ill. Rev. Stat. 1971, ch. 110, par. 72.) A section 72 motion, however, is not a proper vehicle to collaterally attack an alleged denial of constitutional rights. (*See, People v. Warr* (1973), 54 Ill.2d 487, 298 N.E.2d 164.) Nor are the other traditional methods of collaterally attacking a judgment (*i.e.*, habeas corpus and post-conviction relief) available to the respondent in her effort to attack the neglect order. See *People v. Warr, supra; cf., In re Owens* (1972), 51 Ill.2d 583; 283 N.E.2d 892.

■■ However, where the court has not terminated all legal rights of the parents in the child, the parents have a right to petition the court for restoration of parental rights and change of custody. (See, Ill. Rev. Stat. 1971, ch. 37, par. 705—8; see also, *Giacopelli v. Florence Crittenton Home* (1959), 16 Ill.2d 556, 158 N.E.2d 613 (habeas corpus is a proper method for determination of the custody of a child in a dispute between natural parents and third parties); *cf. People ex rel. Bukovich v. Bukovich* (1968), 39 Ill.2d 76, 233 N.E.2d 382.) The order of the court depriving the parents of custody of their child is a continuing order which is only *res judicata* as to the facts which existed at the time the order was entered and is subject to modification by the court. *In re Ramelow* (1954), 3 Ill.App.2d 190, 121 N.E.2d 41; *Oeth v. Erwin* (1955), 6 Ill. App.2d 18, 126 N.E.2d 526.

■■■ At such hearing concerning the restoration of parental rights a parent may raise the question of denial of statutory and constitutional rights at the former neglect hearing. Although a hearing into the question of restoration of parental rights in a neglected child and change of custody is necessarily confined to ascertaining what is in the *present* best interests of the child (see *Giacopelli, supra, and People v. Hoerner* (1972), 6 Ill.App.3d 994, 287 N.E.2d 510) and does not require relitigation of the facts which formed the basis of the original neglect decree, the question of whether a parent has been neglectful in the past may be

relevant to whether the parent has been rehabilitated and has the present ability to properly care for his child. Therefore, where there has been a patent denial of statutory or constitutional rights of parents at the original neglect hearings, the court at this hearing has an obligation and duty to make a searching inquiry into the fairness and correctness of the former decision of neglect.

■■■ We note, however, that the ultimate question which must be answered by the court in this hearing is what is in the best interests of the children. (*Giacopelli, supra,* and *Hoerner, supra.*) The court's resolution of this question depends upon the court's weighing many different variables. The present mental and physical ability of the parent to care for the child is just one variable the court must weigh and, while important, it is not necessarily conclusive of the best interests of the child. (See *Petition of Breger v. Seymour* (1966), 74 Ill.App.2d 197, 219 N.E. 2d 265.) Thus, even if the court finds that the prior neglect hearing resulted in an incorrect decision due to a denial of some constitutional right, this finding is not determinative of the issues in this hearing, and does not require an automatic restoration of custody to the natural parent. The court must still decide what is in the best interests of the child in deciding the issue of custody.

■■ Thus, while counsel for the respondent can properly raise the issue of denial of counsel at a neglect hearing by petitioning the court in relation to custody of the child, he cannot do so by a section 72 motion which attacks the neglect decree itself. Consequently, the appeal from the denial of the section 72 motion is dismissed. Accordingly, we express no opinion as to the merits of the respondent's contention.

For the foregoing reasons the supplemental decree, which terminated Colene Overton's rights to her five minor children and which empowered the Department of Children and Family Services of the State of Illinois to consent to the children's legal adoption, is reversed and respondent's appeal from the court's denial of her section 72 motion is hereby dismissed. We note that nothing in this decision precludes the State from filing another supplemental petition or precludes Colene Overton from filing a petition to restore her parental rights and for custody.

Appeal dismissed in part and reversed in part.

T. MORAN, P. J., and SEIDENFELD, J., concur.