149 Ill. App.3d 663 (1986)
500 N.E.2d 1146
In re S.J.K., a Minor.
No. 5-84-0781.
Illinois Appellate Court  Fifth District.
Opinion filed November 25, 1986.
*664 William L. Gagen, of Gagen & Gagen, of Belleville, for appellant.
Gary E. Peel, of Edwardsville, for appellees James Patrick Ripley and Dimetra Jeanette Ripley.
Dick Allen, State's Attorney, of Edwardsville (Kenneth R. Boyle, Stephen E. Norris, and Vito A. Mastrangelo, all of State's Attorneys Appellate Service Commission, of counsel), for the People.
Reversed and remanded.
PRESIDING JUSTICE KASSERMAN delivered the opinion of the court:
The natural mother of the minor respondent appeals from an order entered by the circuit court of Madison County which awarded "permanent" custody of the minor to foster parents, James and Dimetra *665 Ripley, and "suspended" the natural mother's visitation rights with the minor. The natural mother maintains on appeal that (1) the trial court lacked jurisdiction to award custody of the minor to the foster parents, and (2) the trial court erred in awarding permanent custody of the minor to the foster parents without terminating the parental rights of the natural mother.
The record indicates that on December 28, 1981, the State filed a petition in the circuit court of Madison County, alleging that S.J.K., a six-week-old infant, was a neglected minor as defined in section 2-4 of the Juvenile Court Act (Ill. Rev. Stat. 1981, ch. 37, par. 702-4). The court entered an order on February 26, 1982, finding that the minor was neglected and making her a ward of the court. In an April 29, 1982, dispositional order, the court found that the natural mother, Starlin Mangrum, was unable to protect, train, discipline, or care for the minor and it was in the best interests of the minor to be removed from Ms. Mangrum's custody. The trial court then appointed the guardianship administrator of the Illinois Department of Children and Family Services as the guardian of the minor with the authority to place custody of the minor in accordance with her best interests.
The record further indicates that in June 1982 the minor was placed in the custody of foster parents, James and Dimetra Ripley. On March 2, 1984, these foster parents filed a petition to intervene (Ill. Rev. Stat. 1983, ch. 110, par. 2-408(a)(2)), which the trial court granted on May 22, 1984.
On May 23, 1984, the guardian ad litem who had been appointed to represent the minor filed a motion for review of previous visitation orders, alleging that it would be in the best interest of the minor if the court were to suspend Ms. Mangrum's visitation rights with the minor. On June 12, 1984, the foster parents filed a petition requesting that the court award custody of the minor to them and that Ms. Mangrum's visitation rights with the minor be terminated.
The foster parents introduced the following evidence in support of their petition at a hearing held on September 18, 1984. Dr. Roy Mendelsohn, a child psychiatrist, testified that although the minor had experienced certain difficulties earlier in her life, she was currently overcoming those difficulties because she was "connected in a good way to [the] parenting experience" with the foster parents. Dr. Mendelsohn also stated that the termination of the minor's relationship with the foster parents would be detrimental to the minor because she had "bonded" with the foster parents. Noting that the minor was experiencing unnecessary anxiety resulting from her visits with Ms. Mangrum, Dr. Mendelsohn was of the opinion that it would be in the *666 best interest of the minor if Ms. Mangrum's visitation rights with the minor were terminated.
Robert Clipper, a clinical psychologist, testified that the minor appeared to be secure and comfortable with the foster parents. Accordingly, he stated that it would be in the best interest of the minor to remain with the foster parents. Mr. Clipper also testified that Ms. Mangrum's visitation rights with the minor should be terminated because the minor experienced stress, anxiety, and confusion as a result of her visits with Ms. Mangrum.
After Dimetra Ripley testified that she and her husband had been the minor's foster parents since the minor was six months old, a period of more than three years, the parties stipulated that the foster parents were fit and proper persons to have custody of the minor.
A field investigator employed by the Department of Children and Family Services (Department), who was called as a witness by the State, testified that Ms. Mangrum had cooperated to some extent with the Department's efforts to rectify the conditions which led to the initial finding of neglect. However, the investigator stated that Ms. Mangrum should not have custody of the minor because such conditions had not been rectified at the time of the hearing. In addition, although he did not believe that Ms. Mangrum's parental rights should be terminated, the investigator testified that it would be in the best interest of the minor if Ms. Mangrum's visitation rights were terminated.
Ms. Mangrum admitted that she was in "no condition" to take care of the minor in 1982 when the court determined that the minor was neglected. However, Ms. Mangrum stated that she had "done everything [the Department] had asked" of her in order to regain custody of the minor. Ms. Mangrum further testified that she would not object "at the present time" if the Department retained custody of the minor.
In an order entered on September 20, 1984, the trial court found that it would be in the best interest of the minor to award custody of her to the foster parents and that continued visitation with the minor by either Ms. Mangrum or the minor's natural father, James Allen Kite, would constitute a "serious threat to the mental, physical and emotional well-being of the minor." Accordingly, the trial court (1) granted the permanent exclusive care, custody, control, and education of the minor to the foster parents, (2) suspended both Mr. Kite and Ms. Mangrum's visitation rights with the minor, and (3) terminated the Department's guardianship of the minor.
 1, 2 Ms. Mangrum initially maintains on appeal that the trial *667 court lacked jurisdiction to award permanent custody of the minor to the foster parents. Specifically, Ms. Mangrum points out that (1) in 1982 the trial court appointed the guardianship administrator of the Department as the guardian of the minor with the authority to place the minor in accordance with her best interest, and (2) the Department subsequently placed the minor with the foster parents. Ms. Mangrum argues that the interest of the foster parents in the minor was derived from the Department's guardianship and that when such guardianship was terminated, the trial court lacked jurisdiction to award custody of the minor to the foster parents.
In the September 1984 order, the trial court awarded custody of the minor to the foster parents, suspended Mr. Kite and Ms. Mangrum's visitation rights, and terminated the Department's guardianship. Ms. Mangrum apparently attaches great significance to the sequence in which the trial court listed the foregoing adjudications in the September 1984 order. However, where a trial court has jurisdiction in a particular matter, except in cases of default, that court may grant a party any remedy that is appropriate under the circumstances. (Ill. Rev. Stat. 1983, ch. 110, par. 2-604; Van Walsen v. Blumenstock (1978), 66 Ill. App.3d 245, 250, 383 N.E.2d 776, 779.) Furthermore, the sequence in which the trial court lists its various adjudications in an order will not affect the validity of that order. Accordingly, we reject Ms. Mangrum's contention that the September 1984 order was invalid because the court no longer had jurisdiction to award custody after the termination of the Department's guardianship.
 3 Ms. Mangrum raises another jurisdictional issue in the instant appeal. As she points out, this cause was commenced in 1981 when the State filed a petition which alleged that the minor was neglected within the meaning of the Juvenile Court Act (Act) (Ill. Rev. Stat. 1981, ch. 37, par. 701-1 et seq.). After a hearing, the trial court placed the minor in the custody of the Department of Children and Family Services pursuant to section 5-7 of the Act (Ill. Rev. Stat. 1981, ch. 37, par. 705-7). However, the foster parents' petition for custody recited that it was filed pursuant to both section 601 of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (Ill. Rev. Stat. 1983, ch. 40, par. 601) and section 5-8(3) of the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 705-8(3)). In the September 1984 order, the trial court found that "[it had] jurisdiction of the subject matter and the parties" under section 601 of the IMDMA and also "took note" of sections 602 and 607 of the IMDMA (Ill. Rev. Stat. 1983, ch. 40, pars. 602, 607) and section 5-8(3) of the Juvenile *668 Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 705-8(3)).
Section 601(b)(2) of the IMDMA provides that a child custody proceeding may be commenced in the circuit court:
"by a person other than a parent, by filing a petition for custody of the child in the county in which he is permanently resident or found, but only if he is not in the physical custody of one of his parents." (Ill. Rev. Stat. 1983, ch. 40, par. 601(b)(2).)
Section 602(a) of the IMDMA states that a court shall determine custody in accordance with the best interest of the child. (Ill. Rev. Stat. 1983, ch. 40, par. 602(a).) Section 607(c) of the IMDMA provides:
"The court may modify an order granting or denying visitation rights whenever modification would serve the best interest of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral or emotional health." Ill. Rev. Stat. 1983, ch. 40, par. 607(c).
Section 5-8(3) of the Juvenile Court Act states in part that a minor or any person interested in the minor:
"may apply to the court for a change in custody of the minor and the appointment of a new custodian or guardian of the person or for the restoration of the minor to the custody of his parents or former guardian or custodian." Ill. Rev. Stat. 1983, ch. 37, par. 705-8(3).
In its judgment, the trial court apparently relied on sections 601 and 602 of the IMDMA in order to award "permanent custody" of the minor to the foster parents and section 607 of the IMDMA in order to suspend Ms. Mangrum's visitation rights with the minor. Ms. Mangrum urges that the trial court, in a proceeding commenced under the Juvenile Court Act, could not rely upon the provisions of the IMDMA in order to change the custody of the minor from the Department to the minor's foster parents and to suspend Ms. Mangrum's visitation rights with the minor.
Historically, the resolution of this issue would have depended, in part, upon the particular court in which the foster parents chose to file their petition. At one time, "juvenile courts" and "divorce courts" were considered courts of concurrent jurisdiction, but this jurisdiction was deemed to arise from different circumstances, related to the varying purposes of the acts, and reflected by each court's disparate powers of disposition. However, the Constitution of 1870, as amended in 1962, and the Constitution of 1970 provide for a single, unified circuit court. (Ill. Const. 1870, art. VI, sec. 1 (amended); Ill. Const. 1970, art. VI, sec. 1; People v. Woods (1979), 78 Ill. App.3d 431, 435, 396 *669 N.E.2d 1204, 1208.) Furthermore, the Constitution of 1970 provides that all circuit courts shall have original jurisdiction over all justiciable matters with two exceptions not here relevant. (Ill. Const. 1970, art. VI, sec. 9; People v. Woods (1979), 78 Ill. App.3d 431, 435, 396 N.E.2d 1204, 1208.) Accordingly, the terms "juvenile court" and "divorce court" no longer refer to separate courts but are merely appellations to identify the nature of a particular case in which the circuit court is sitting. In re L.E.J. (1983), 115 Ill. App.3d 993, 995, 451 N.E.2d 289, 291.
Although jurisdiction of all justiciable matters is now vested in a single, unified circuit court system and it is no longer necessary for parties to choose a particular court in which to file their petitions for relief, the parties may still rely on various statutes in order to obtain the relief sought in the circuit court. Stated differently, a party no longer is required to determine whether to file a child custody petition in the "juvenile court" or the "divorce court"  any such petition must be filed in the circuit court. Nevertheless, it appears that in some situations, a party may rely on both the IMDMA and the Juvenile Court Act in order to obtain resolution of a child-custody dispute. For example, the authors of the Historical and Practice Notes to section 601 of the IMDMA indicate:
"[In addition to proceedings under Section 601], [c]hild custody proceedings can also be initiated under the Habeas Corpus Act (Ill. Rev. Stat., ch. 65, par. 1 et seq.); Probate Act (Ill. Rev. Stat., ch. 110 1/2, par. 11-5); and Juvenile Court Act (Ill. Rev. Stat., ch. 37, par. 704-1)." (Ill. Ann. Stat., ch. 40, par. 601(b), Historical and Practice Notes, at 8 (Smith-Hurd 1980).)
However, there is no indication in either the statutory annotations or the case law that sections 601, 602, or 607 of the IMDMA may be applied to resolve custody disputes where proceedings have been commenced under the Juvenile Court Act and the minor is in the custody of the Department by virtue of such Act.
We recognize that a judgment can be sustained by the court of review on any basis appearing in the record which validly supports it. (In re Application of County Treasurer (1976), 35 Ill. App.3d 449, 451, 342 N.E.2d 249, 251.) Accordingly, we need not determine whether the trial court in this case properly relied upon the provisions of the IMDMA, because we conclude that the trial court could have relied upon the provisions of the Juvenile Court Act in order to change the custody of the minor from the Department to the foster parents and to suspend Ms. Mangrum's visitation rights with the minor.
*670 In support of our conclusion that the trial court could have relied on the provisions of the Juvenile Court Act in the September 1984 order rather than on the provisions of the IMDMA, we note that where, as here, a parent has been deprived of custody of her child at a time when the child was declared neglected, the circuit court's jurisdiction is a continuing one. Thus, a dispositional order which awards custody of a neglected minor does not operate to close the proceedings on the original petition and such order is always subject to modification by the court until a final closing or discharge of the proceedings pursuant to section 5-11 of the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 705-11). (In re Johnson (1981), 102 Ill. App.3d 1005, 1016, 429 N.E.2d 1364, 1374.) Section 5-11 provides that proceedings are terminated (1) automatically when the minor attains 21 years of age, or (2) when the court orders the wardship terminated and the proceedings discharged when it is in the best interests of the minor. (In re Johnson (1981), 102 Ill. App.3d 1005, 1016-17, 429 N.E.2d 1364, 1374.) Neither event occurred in the case at bar; therefore, the original neglect proceedings in this case were not terminated by the 1982 dispositional order which appointed the Department as the guardian of the minor.
We also note that the standard to be applied in all guardianship and custody cases is the best interest of the child, regardless of whether the proceedings are brought under the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 701-2(3)(c)) or the IMDMA (Ill. Rev. Stat. 1983, ch. 40, par. 602). (Moseley v. Goldstone (1980), 89 Ill. App.3d 360, 369, 411 N.E.2d 1145, 1152.) The provisions of the September 1984 order indicate that the trial court properly applied this standard in the case at bar. In addition, the venue requirements of the Juvenile Court Act were satisfied in this case where the foster parents' petition was filed in the circuit court of the county in which the minor was residing. Ill. Rev. Stat. 1983, ch. 37, par. 702-6(1).
With respect to that portion of the September 1984 order which transferred custody of the minor from the Department to the foster parents, we note that section 5-8(3) of the Juvenile Court Act provides in part:
"[A]ny person interested in the minor may apply to the court for a change in custody of the minor and the appointment of a new custodian or guardian of the person * * *." (Ill. Rev. Stat. 1983, ch. 37, par. 705-8(3).)
In the instant case, the minor had resided with the foster parents since the minor was six months old, a period of more than three years. The record does not indicate that any attempt was made during *671 this period to remove the minor from the foster parents. In fact, the evidence presented at the hearing in this case reveals that the foster parents had created and maintained a successful parent-child relationship with the minor. Accordingly, we conclude that the foster parents are "persons interested in the minor" for purposes of section 5-8(3) of the Juvenile Court Act and could bring a petition for change of custody. See In re Konczak (1977), 55 Ill. App.3d 217, 218, 371 N.E.2d 136, 137.
Ms. Mangrum also maintains that even if the trial court could have properly relied on section 5-8(3) of the Juvenile Court Act, the trial court erred in changing the custody of the minor from the Department to the foster parents because the court did not make the finding required by section 5-7(1) of the Act (Ill. Rev. Stat. 1983, ch. 37, par. 705-7(1)). Specifically, Ms. Mangrum argues that the trial court was required to find that the "appropriate services aimed at family preservation and family reunification [had] been unsuccessful in rectifying the conditions" which led to the initial finding that the minor was neglected. Ill. Rev. Stat. 1983, ch. 37, par. 705-7(1).
We need not address this argument because Ms. Mangrum has failed to cite any supporting authorities and the argument presented is little more than bare assertions of the issues sought to be raised. Deckard v. Joiner (1974), 44 Ill.2d 412, 419, 255 N.E.2d 900, 904.
In any event, we conclude that Ms. Mangrum's argument concerning this issue is without merit. We initially note that before originally placing a neglected minor pursuant to section 5-7 of the Juvenile Court Act, a trial court must make a finding that the appropriate services aimed at family preservation and reunification have been unsuccessful in rectifying the conditions which led to the neglect finding. However, section 5-8(3), governing changes in custody, does not expressly require the trial court to make such a finding. Furthermore, no authority has been cited or discovered which indicates that a trial court must make such a finding. Accordingly, we conclude that if the legislature had intended to require trial courts to make such a finding when ruling upon section 5-8(3) petitions requesting changes in custody, it would have so stated. See In re Petition for Fees (1986), 148 Ill. App.3d 453, 455-56.
With respect to that portion of the September 1984 order which "suspended" Ms. Mangrum's visitation rights with the minor, we note that section 5-5(1)(a) of the Juvenile Court Act provides:
"The court may make an order of protection in assistance of or as a condition of any other order authorized by this Act. The order of protection may set forth reasonable conditions of behavior *672 to be observed for a specified period by any person who is before the court on the original or supplemental petition. Such an order may require any such person
(a) To stay away from the home or the minor." (Ill. Rev. Stat. 1983, ch. 37, par. 705-5(1)(a).)
Although there are few cases which have interpreted section 5-5, we note that the court in In re S.A.C. (1986), 147 Ill. App.3d 656, recently determined that the language of section 5-5 of the Juvenile Court Act, permitting an order of protection to issue against any person "who is before the court on the original or supplemental petition," refers only to a person named as a respondent under the provisions of section 4-1(4) of the Act. (Ill. Rev. Stat. 1983, ch. 37, pars. 705-5, 704-1(4); In re S.A.C. (1986), 147 Ill. App.3d 656, 658.) Section 4-1(4) specifies that "[i]f an order of protection under section 5-5 is sought against any person, the petition shall so state, shall name that person as a respondent, and give the address where he resides." (Ill. Rev. Stat. 1983, ch. 37, par. 704-1(4).) In In re S.A.C., Mr. Rasmussen, the adult against whom the order of protection was entered, was physically present in the courtroom at the hearing on the petition but was not represented by counsel and had no fair opportunity to present his objections to the order. Accordingly, the court in In re S.A.C. concluded that the failure to apprise Mr. Rasmussen that his presence was required as a party at the hearing, along with the failure to name him as a respondent in a petition or amended petitions specifically seeking an order of protection against him, rendered the order of protection void.
In the case at bar, there was no petition filed which requested the entry of an order of protection against Ms. Mangrum. However, as indicated by the court in In re S.A.C., an adult who is properly a respondent in a juvenile case but is not summoned as a respondent may waive summons by an appearance before the court. In the instant case, Ms. Mangrum and her counsel attended a hearing on the foster parents' petition and presented evidence and cross-examined the foster parents' witnesses. Accordingly, we conclude that any shortcoming in the foster parents' petition was waived by Ms. Mangrum's appearance and full participation in the September 1984 hearing.
We note that section 5-5 of the Juvenile Court Act does not set forth a standard for determining whether an order of protection should be entered. However, in support of its decision to "suspend" Ms. Mangrum's visitation rights with the minor, the trial court in this case found that "visitation with the minor * * * [by Ms. Mangrum] * * * constitutes a continuous serious threat to the mental, physical and *673 emotional well being of the minor." Ms. Mangrum does not argue on appeal that this finding is contrary to the manifest weight of the evidence. The trial court's finding that continued visitation would endanger the physical and emotional well-being of the minor constitutes a sufficient basis to support the entry of an order of protection requiring Ms. Mangrum to stay away from the minor. Accordingly, we conclude that the trial court could have accomplished the goal of keeping Ms. Mangrum away from the minor by entering an order of protection pursuant to section 5-5(1)(a) of the Juvenile Court Act  rather than by "suspending" Ms. Mangrum's visitation rights pursuant to section 607 of the IMDMA.
We note that orders of protection entered under section 5-5 of the Juvenile Court Act may require individuals to observe reasonable conditions of behavior "for a specified period" of time. In the case at bar, however, the trial court did not specify the period in which Ms. Mangrum's visitation rights would be "suspended." Accordingly, we conclude that the suspension of Ms. Mangrum's visitation rights with her child without limitation was impermissible. Therefore, we remand the cause to the trial court with directions to enter an order which specifies the period during which Ms. Mangrum must "stay away from" the minor. Ill. Rev. Stat. 1983, ch. 37, par. 705-5(1)(a).
 4 One final point must be addressed. Ms. Mangrum argues that (1) the trial court's award of "permanent" custody of the minor to the foster parents and the "suspension" of Ms. Mangrum's visitation rights to the minor constitutes a de facto termination of Ms. Mangrum's parental rights and (2) the trial court erred in terminating Ms. Mangrum's parental rights without first finding that she was an unfit parent. Ill. Rev. Stat. 1983, ch. 37, par. 705-9(2); Ill. Rev. Stat. 1983, ch. 40, par. 1501.
Based on the record, we conclude that the trial court did not intend to terminate Ms. Mangrum's parental rights. In fact, the foster parents admit on appeal that the September 1984 order does not terminate Ms. Mangrum's parental rights. The confusion concerning the effect of the September 1984 order stems from the trial court's award of "permanent" custody of the minor to the foster parents. An order of a court depriving the parents of the custody of a child is a continuing order which is only res judicata as to the facts which existed at the time the order was entered and the parents have a right to petition the court for restoration of parental rights and change of custody until the court terminates all of their legal rights to the child. (In re Overton (1974), 21 Ill. App.3d 1014, 1020, 316 N.E.2d 201, 206.) Accordingly, we remand this cause so that the trial court may delete the *674 word "permanent" from that portion of its order awarding custody of the minor to the foster parents.
For the reasons stated herein, the judgment entered by the circuit court of Madison County is reversed and this cause is remanded to the circuit court with directions.
Reversed and remanded with directions.
JONES and HARRISON, JJ., concur.