In re WILLIAM WORKMAN et al., Minors.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. CYNTHIA WORKMAN, Respondent-Appellant.)

Third District   No. 74-210

Opinion filed December 31, 1975.

BARRY, J., specially concurring.

Snyder & Tieman, of Joliet (Lyman C. Tieman, of counsel), for appellant.

Martin Rudman, State's Attorney, and Alexander Bonds, both of Joliet (Alan R. Bruggeman, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal by Cynthia Workman, mother of William Workman and Robert Workman, minors, from the orders of the Circuit Court of Will County which terminated her parental rights and denied a subsequent "petition for rehearing."

The record discloses that the State of Illinois filed a petition on February 23, 1972, which alleged that the children, William Workman and Robert Workman, were neglected and should be made wards of the court (See Ill. Rev. Stat. 1971, ch. 37, pars. 702—4, 704—1). Cynthia Workman and her husband Robert Workman were then in the process of getting a divorce and they consented to the temporary guardianship of the children. On June 2, 1972, the State filed a supplemental petition alleging that the mother was unfit and requesting the appointment of a guardian with power to consent to adoption under the terms of sections 4—1(5) and 5—9(3) of the Juvenile Court Act and section 1 of the Adoption Act (Ill. Rev. Stat. 1971, ch. 37, pars. 704—1(5), 705—9(3), and ch. 4, par. 9.1—1). The written consent of the father, Robert Workman, was filed in such action.

Following the hearing on July 24, 1972, the trial court entered an order on April 5, 1973, finding Cynthia Workman unfit and terminating her parental rights. The minors were made wards of the court and a guardian was appointed with power to consent to adoption. It appears that both of

the boys, who were 7 and 5 respectively at the time of the hearing, were placed in foster care during 1972 and have remained under such care.

Apparently no further action occurred until October 12, 1973, when Cynthia Workman filed what was labeled as a "petition for rehearing." On the next day the trial court ordered an evidentiary hearing. On April 5, 1974, the trial court denied the petition and from that order and, assertedly, from the primary order a year earlier, Cynthia Workman has appealed to this court.

■■■ There is no dispute as to the legal principles concerning the finding of unfitness of a parent other than as applied to the particular facts in the case before us. (See *In re Gibson* (1975), 24 Ill. App. 3d 981, 322 N.E.2d 225.) The State contends, however, that the notice of appeal in this case was filed far too late to allow us to consider the initial finding of unfitness. The order of the court was entered on April 5, 1973, and was clearly a final and appealable order, since it found Cynthia Workman to be unfit and terminated her rights as to custody of the minors, Robert and William Workman. The adjudication of wardship made in that order was specifically described as a final judgment by the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 704—8(3)). Nothing was done by appellant in the 30-day period following the entry of the order nor, in fact, for over 6 months thereafter, to question that judgment. Since there was no filing of a notice of appeal within 30 days of that judgment, or any other appropriate action such as a post-trial motion, it is clear that no appeal could be maintained from that judgment under the present procedure (Supreme Court Rule 303, Ill. Rev. Stat. 1973, ch. 110A, par. 303; *cf.*, *Deckard v. Joiner*, (1970), 44 Ill. 2d 412, 416-17, 255 N.E.2d 900; *Egermaier v. Egermaier* (1970), 128 Ill. App. 2d 448, 451, 262 N.E.2d 376).

The State, however, further contends that the court order denying appellant's "petition for rehearing" is not appealable because the petition was not filed within 30 days after entry of the April 5, 1973, order as required by statute. (Ill. Rev. Stat. 1973, ch. 110, par. 68.3(1).) We find, on analysis, however, that the petition filed herein was not the usual "petition for rehearing" contemplated by court rule. As clearly appears from the face of the petition and the type of evidence brought forth at the evidentiary hearing thereon, the petition in fact sought a modification of the April 5, 1973, order by reason of a subsequent change in circumstances. A petition of this nature has been considered in other cases on appeal. In the case of *In re Ramelow* (1954), 3 Ill. App. 2d 190, 197, 121 N.E.2d 141, the court allowed a petition for restoration of parental rights, after they had been taken away, in a proceeding similar to that in the instant case. The court in the *Ramelow* case there concluded that the parent could file for restoration of rights, on the ground of changed

circumstances, at any time before a petition to adopt the child or children was filed. Similarly, in *Oeth v. Erwin* (1955), 6 Ill. App. 2d 18, 22, 23, the court also noted that a mother might petition for restoration of custodial rights by reason of a change in circumstances, even though a guardian had been appointed with power to consent to adoption. It is not clear that the courts have determined that an order could permanently deprive a parent of the right to petition for restoration of custodial rights prior to the filing of a petition to adopt a child or children under the statutes as they now appear (Ill. Rev. Stat. 1973, ch. 4, par. 9.1—17, and ch. 37, par. 705—9(1) *et seq.*).

■■ We believe, however, that it is wise to be guided by prior cases considering this issue to which we have referred. The proceeding in this case was apparently treated by the trial court as a petition for restoration of custodial rights. It is notable that the court, in this case, expressly retained jurisdiction over the wards in order to consider such further procedures as, from time to time, might be found in accordance with equity and in accordance with statutes. Since the petition in this case alleged that appellant was entitled to regain her parental rights by reason of a change in circumstances occurring since the entry of the April 5, 1973, order (and apparently because no adoption petition was pending as to the children), we find that there was no particular time limit within which the petition was required to be filed and that the appeal (timely taken) from the denial of that petition is properly before this court.

■■ It is contended by appellant the finding of the trial court was contrary to the manifest weight of the evidence. Viewing the evidence as a whole, we cannot say that the trial court was not within its discretion in denying the petition to regain parental rights and custody of the children, since the court did conclude that there was no significant evidence to show clearly that appellant has now become qualified to reacquire parental rights and the custody of the children, and that it is to the best interests of the children that she be given such rights. The trial court was in best position to observe the petitioner, and to give consideration to the evidence as presented in the trial court. The record itself does not clearly show that the determination of the trial court was contrary to the manifest weight of the evidence.

On the basis of the record, therefore, and for the reasons stated, the appeal from the order of April 5, 1973, is dismissed, and the order of the Will County Circuit Court dated April 5, 1974, is affirmed.

Appeal from order of April 5, 1973, is dismissed and order of April 5, 1974, is affirmed.

STENGEL, J., concurs.

Mr. JUSTICE BARRY, specially concurring:

I agree with the results reached by the majority, but I am persuaded that I must comment on the residual rights of parents petitioning for restoration.

I am very strongly persuaded that when all parental rights are terminated, there exists no residual right to petition for restoration of custody.

The court in *Ramelow* reached the conclusion that there is a legal remedy vested in the natural parents of a child for restoration of custodial rights by reason of changed circumstances following a previous final order terminating parental rights by construction of section 9c of "An. Act relating to children who are * * * dependent, neglected or delinquent * * *" (Ill. Rev. Stat. 1951, ch. 23, par. 201) which has since been repealed and has never been reenacted by any parallel enactment. Instead I believe section 5—9 of the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 705—9) is now the controlling law, that an order terminating parental rights and empowering a guardian to consent to adoption "deprives the parents of the minor of *all legal rights* * * *." (Also see Ill. Rev. Stat. 1973, ch. 37, par. 701—16). When such an order terminating all parental rights (as opposed to a mere custody order) is allowed to become final by lack of appeal, there cannot exist a subsequent legal right to petition for restoration of custodial rights by reason of changed circumstances.

*Oeth* clearly and correctly defines that adoption and custody are entirely different things. In that case, the infant had been declared a neglected child and custody was given a guardian with power to consent to adoption, but no finding had been made that the natural mother was unfit or had consented to giving the guardian such power. In the absence of her consent or a finding of unfitness, the circuit court there was held to have been without jurisdiction to give the guardian the power to consent to an adoption, precisely because the order did not terminate the rights of the natural mother. Hence, because she had not been deprived of all parental rights by a valid prior order of court, she was entitled to petition for restoration of custody. Fortuitously the natural parent there learned of the adoption proceeding in some unknown way within 4 days after guardian filed written consent.

The majority's recognition of a right to petition for restoration of custody following a final order terminating all parental rights here, will, in my judgment, seriously jeopardize the public policy and procedures established by the adoption act.

Under that act, it is the usual procedure where agencies are involved to place children for adoption after the parental rights of natural parents are

*terminated.* The infant must then remain in the home of prospective unrelated adoptive parents for 6 months before a final adoption order can be entered. If this court recognizes in this context that following an order terminating the rights of the natural parents, there nonetheless exists some *residual right* in the natural parents to seek restoration of custody because of their changed circumstances while the infant was in the custody of prospective adoptive parents, several problems arise. Must the natural parents be made parties to the adoption petition to terminate this residual right of the natural parents? If so, is that consistent with the scheme of the adoption act which attempts by impoundment of records, and other devices, to preclude the natural parents and adoptive parents from learning of each others' identity, except for good cause? It does not promote the State's interest in finding suitable adoptive homes to create a situation whereby prospective adoptive parents must live for months with uncertainty as to whether they can adopt.

In my opinion once all parental rights have been terminated by a final order, the natural parents can collaterally attack the validity of such order by petition for writ of habeas corpus, but the burden would not merely be one of showing that they have reformed. (*People ex rel. Karr v. Weihe,* 30 Ill. App. 2d 361, 172 N.E.2d 897 (2d Dist. 1961).) They may also petition for adoption themselves, and if the court finds them now fit, the court can order its appointed guardian, even though antagonistic, to consent.

I would find that the circuit court order of April 5, 1973, was a final and appealable order and was not timely appealed; I would find the petition for rehearing filed October 12, 1973, not properly before the court and should have been dismissed.