*In re* WILLIAM WORKMAN *et al.*—(CYNTHIA GILLION, Petitioner-Appellant, *v.* THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee.)

Third District   No. 77-157

Opinion filed February 14, 1978.

ALLOY, J., concurring in part and dissenting in part.

Goldberg & Murphy, Ltd., of Chicago (Patrick T. Murphy, of counsel), for appellant.

Edward Petka, State's Attorney, of Joliet (Ruth Anne Perley, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

Petitioner Cynthia Gillion appeals from an order of the Circuit Court of Will County which denied her petition for restoration of her parental rights and other relief.

This cause originated in 1972 when the Will County State's Attorney filed a petition alleging that William and Robert Workman were neglected minors and should be made wards of the court pursuant to section 4—1 of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 704—1). During the course of those proceedings, the boys' father Robert Workman signed a written consent to adoption, and after a hearing as to the mother's fitness, the trial court entered an order on April 5, 1973, finding her unfit and terminating her parental rights in accordance with section 5—9 of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 705—9). Because of her indigency, counsel was appointed to represent the mother at the fitness hearing.

After judgment was entered the mother, who is the petitioner herein,

was advised of her right to appeal, but the record does not show that the court made any inquiry as to her financial condition or advised her of her right to a free transcript and appointed counsel for the appeal. Later petitioner retained her former appointed counsel and on October 12, 1973, filed a petition for rehearing. Because the petition asserted changed circumstances, including petitioner's divorce from Workman, the trial court apparently elected to treat the petition for rehearing as a petition for restoration of parental rights, and an evidentiary hearing was held. The petition was denied on April 5, 1974. On appeal this court affirmed the trial court (*In re Workman* (3d Dist. 1975), 38 Ill. App. 3d 261, 344 N.E.2d 796), with the majority opinion recognizing petitioner's right to petition for restoration of her parental rights, but holding that the decision of the trial court was not contrary to the manifest weight of the evidence.

After petitioner was denied both leave to appeal by the Illinois Supreme Court and a writ of certiorari by the United States Supreme Court, she filed a new petition in the circuit court titled "Amended Petition for a Report of the Guardian and for a Restoration of Parental Rights; a Petition for a Writ of Habeas Corpus; and a Petition Pursuant to Section 72 of the Illinois Civil Practice Act." In this petition she alleged that changes in her circumstances indicate that it would be in the children's best interest for them to return to her and that the April 5, 1973, order was illegal because she was not notified of her right to a free appeal and because her appointed trial counsel failed to file a timely notice of appeal. In her prayer for relief she requested a hearing on the question of custody and also requested that she be allowed to file a notice of appeal *nunc pro tunc* from the April 5, 1973, order finding her unfit.

The trial court denied the petition without an evidentiary hearing on the merits and stated that the best interest of the minor children required finality for the order terminating parental rights. This appeal followed. We affirm.

Petitioner argues that she had an absolute right to a hearing on her petition since, in our earlier decision, we acknowledged her right to petition for restoration of her parental rights after a termination order and found that there was no time limit within which such a petition must be filed. (*In re Workman* (3d Dist. 1975), 38 Ill. App. 3d 261, 264, 344 N.E.2d 796, 798.) She also cites *In re Ramelow* (3d Dist. 1954), 3 Ill. App. 2d 190, 121 N.E.2d 41, where the court ruled that an order depriving a mother of custody of her children and appointing a guardian was a continuing order, subject to modification, and therefore that the mother was entitled to a hearing on her petition to restore her right to custody as long as such petition predated any adoption petition.

Although we relied upon *Ramelow* in our earlier decision in this cause, we now conclude that the 1954 *Ramelow* decision is not controlling here because subsequent statutory amendments have changed the law

governing termination of parental rights. At the time of *Ramelow*, section 9c of the Family Court Act (Ill. Rev. Stat. 1953, ch. 23, par. 201) provided that, where a dependent, neglected or delinquent minor had been awarded to a guardian, the minor or any interested person might "from time to time upon a proper showing apply to the court for the appointment of a new guardian or the restoration of such child to the custody of its parents or for the discharge of the guardian so appointed." That provision, relating solely to custodial rights, has been substantially retained in section 5—(3) of the Juvenile Court Act,[1] but the laws relating to the termination of all parental rights have undergone significant change. In 1954 section 15 of the Family Court Act (Ill. Rev. Stat. 1953, ch. 23, par. 209), provided for appointment of a guardian with power to consent to the adoption of the child, but made no mention of the termination of parental rights. Rather, section 5—1 of the Adoption Act of 1945 (Ill. Rev. Stat. 1953, ch. 4, par. 5—1), then in effect, provided that a decree of adoption deprived the natural parents of all legal rights with respect to the child. Thus, at that time natural parents could not be permanently deprived of their legal rights prior to entry of a decree of adoption, and petitions for a restoration of custody could be filed until the adoption became final. Such was the holding in *Ramelow*.

■■ In 1957, section 15 of the Family Court Act (Ill. Rev. Stat. 1957, ch. 23, par. 2026) was amended to provide that an order authorizing a guardian to consent to an adoption "shall deprive the natural parents of such child of all legal rights as respects such child * * *." Two years later the Adoption Act of 1959 was enacted, and former section 5—1 was revised to be compatible with the amended Family Court Act, as follows:

> "After the entry either of *an order terminating parental rights* or the entry of a decree of adoption, the natural parents of a child sought to be adopted shall be relieved of all parental responsibility for such child and shall be deprived of all legal rights as respects the child, and the child shall be free from all obligations of maintenance and obedience as respects such natural parents." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—17.)

This section quite clearly requires that an order terminating parental rights be accorded the same legal effect as a decree of adoption insofar as the natural parents are concerned. As Justice Cardozo said in *Williams v. Baltimore* (1933), 289 U.S. 36, 46, 77 L. Ed. 1015, 1024, 53 S. Ct. 222, "Time with its tides brings new conditions which must be cared for by new laws."

---

[1] "The minor or any person interested in the minor may apply to the court for a change in custody of the minor and the appointment of a new custodian or guardian of the person or for the restoration of the minor to the custody of his parents or former guardian or custodian." Ill. Rev. Stat. 1975, ch. 37, par. 705—8(3).

■■ In *People v. Gibbs* (5th Dist. 1975), 30 Ill. App. 3d 878, 333 N.E.2d 226 (abstract), where the natural mother sought visitation rights after the court had entered an order terminating her parental rights, the reviewing court considered the legislative history of these statutes and concluded that the trial court properly refused to hear the petition. Justice Eberspacher stated:

> "The reason for the change in the statute is clear. Under the repealed statute, [Ill. Rev. Stat. 1953, ch. 4, par. 5—1], visitation and custody could still be sought until the very consummation of the adoption. The uncertainty and upheaval this avenue created was not beneficial for the children, the natural parents or the adoptive parents. The statute was changed to make the termination final * * *."

The court in *Gibbs* held that, even before a final adoption proceeding, all rights are terminated by an order of termination of parental rights. (Accord, *Gray v. Starkey* (5th Dist. 1976), 41 Ill. App. 3d 555, 353 N.E.2d 703.) Thus a distinction must be drawn between a custody order, such as that in *Ramelow*, and an order terminating all parental rights. See also *In re Overton* (2d Dist. 1974), 21 Ill. App. 3d 1014, 316 N.E.2d 201.

■■ We also note that petitioner's view would require notice to or joinder of natural parents when an adoption petition is filed. (See Justice Barry's special concurring opinion in *In re Workman* (3d Dist. 1975), 38 Ill. App. 3d 261, 266, 344 N.E.2d 796, 800.) The court in *Gray v. Starkey* observed:

> "[O]nce the rights of a parent have been terminated by a court of competent jurisdiction, the name and address of the parent 'shall be omitted' from an adoption petition brought thereafter and the parent is not to be made a party defendant to the petition. Ill. Rev. Stat., ch. 4, pars. 9.1—5B(f)(1) and 9.1—7A." (41 Ill. App. 3d 555, 560, 353 N.E.2d 703, 707.)

Obviously the Adoption Act does not now contemplate the survival of any residual rights in the natural parents once an order of termination has been entered. The legislature has determined that the best interest of children of unfit parents requires a final and permanent termination of all legal rights of the parents in advance of the adoption decree. We agree with the trial court that the best interest of the Workman children requires that their legal status be determined with certainty. According to the record, the foster parents, who have cared for the boys for five years, are waiting for the final termination of petitioner's rights before filing a petition to adopt.

■■ In our view, after the expiration of petitioner's right to appeal from the 1973 order terminating her parental rights, she was no longer entitled to seek a restoration of those rights by means of a petition to

modify that order. To the extent our earlier opinion in *In re Workman* can be said to have permitted such a procedure, it is overruled.

■■ Petitioner also argues that she is entitled to a writ of *habeas corpus* or to relief under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 72) because she was denied her constitutional rights to due process and equal protection when the trial court failed to advise her of her right to a free appeal in 1973. The extraordinary remedy of *habeas corpus* is available only on the grounds specified in the statute (Ill. Rev. Stat. 1975, ch. 65, par. 22), and petitioner's allegations fall outside the scope of the statute. (*People v. Warr* (1973), 54 Ill. 2d 487, 298 N.E.2d 164.) Likewise, she has no valid basis for relief under section 72 since an alleged denial of constitutional rights cannot be raised by a section 72 petition. *People v. Warr; In re Overton* (2d Dist. 1974), 21 Ill. App. 3d 1014, 316 N.E.2d 201.

For the reasons stated, we affirm the judgment of the Circuit Court of Will County.

Affirmed.

BARRY, J., concurs.

Mr. JUSTICE ALLOY, concurring in part and dissenting in part:

While I agree with the result announced in this case, I cannot concur in the language and reasoning adopted with respect to the first issue argued on appeal which involves the question of whether a trial court has the power to conduct a hearing on the merits of a petition seeking to vacate a previous order of the trial court and calling for restoration of custody in the parents as being in the best interests of the children. The majority opinion apparently concludes that the trial court has no power to act to modify or vacate a prior order, even in the best interests of the children. This is not an issue involving a question of restoration of parental rights simply by virtue of parentage. It involves an issue as to whether there is any power in the court to consider and act, in a proper case, in the best interests of the children, if restoration of custody in the parents is found to be in the best interests of the children.

On appeal in the instant case it is apparent that the basic issues are: (1) Does the trial court in this case retain the power to replace the guardian or vacate or modify its prior order in the best interests of the children, including restoration of custody to the parents, if no adoption is as yet in process, and (2) does section 5—9 of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 705—9) prevent the court from giving consideration to a petition by the natural parents, seeking such relief, where the parents contend that such modification is in the best interests of the children. An

analysis of the situation establishes that the court certainly has such power and is not inhibited by section 5—9 of the Juvenile Court Act in granting relief in a proper case.

It is contended by the appellee that by virtue of the order empowering the guardian to consent to adoption there cannot exist a subsequent right to petition for restoration of custody to the parents, even if in the best interests of the children. On the basis of appellee's argument, a petition which would actually establish that it is completely contrary to the best interests of the children to deny such petition could not be considered by the court. This position is obviously wrong. For a proper analysis of this issue, it is important that we examine the Juvenile Court Act in this State with respect to the pertinent provision thereof (Juvenile Court Act, Ill. Rev. Stat. 1975, ch. 37, par. 701—1 et seq). We must first begin with the premise, established in the Act, that the procedures in the Juvenile Court Act, including the provision particularly under consideration, are designed with the objective that the terms and conditions of the Juvenile Court Act shall be interpreted in a manner which is in the best interests of the child or children involved (Ill. Rev. Stat. 1975, ch. 37, par. 701—2). The primary and overriding consideration, therefore, is to determine what is in the best interests of the child or children involved. The interpretation sought by the appellee would call for a rigid and improper construction of the act under consideration, which, I believe, is not required either by the terminology itself or by any consistent interpretation of the Juvenile Court Act. The current act, in its language (Ill. Rev. Stat. 1975, ch. 37, par. 705—9(2)), provides that entry of an order empowering the guardian to consent to adoption terminates parental rights, and that the parents of the ward are relieved of all parental responsibility for such child, are deprived of all legal rights as respects the child, and frees the child from all obligations of maintenance and obedience as respects his natural parents.

The language simply codified what had been the rule previously as expressed in many cases, and establishes that so long as the order appointing the guardian with power to consent to the adoption is in force and effect, parental rights are terminated. As I observe later, there is nothing in the Act which states that the trial court loses its power to modify that order, or that a petition for modification of that order could not be considered by the court if there is a showing made that the modification or action sought, would be in the best interests of the child or children involved. The courts have also recognized that the parent, so long as such order was in force and effect, is not a necessary party to an adoption proceeding. No one (including the writer) has maintained that any parent involved in such proceeding, where such an order has been entered, has a right, solely by virtue of being a parent, to modification of

the order. It is clear, however, that the court retains the power to modify the order or vacate it, if the best interests of the child or children involved so requires, and may, in the language of section 5—8(3), if deemed to be in the best interests of the children, provide that the minor could be restored to the custody of his parents or former guardian or custodian.

As I later observe, no language (in section 5—9 or in the Act) requires or directs that the court may not give consideration to a petition filed by the parent seeking modification or vacation of the order, if it is clearly shown to be in the best interests of the child or children, prior to procedures relating to adoption. It would also be a very strange provision, and of doubtful constitutionality, if a legislative enactment were to seek to provide that a court could not consider such petition if it is truly in the best interests of the children under consideration.

In section 5—8(3) of the Act it is provided "[t]he minor or any person interested in the minor may apply to the court for a change in custody of the minor and the appointment of a new custodian or guardian of the person or for restoration of the minor to the custody of his parents or former guardian or custodian." This provision of the Act was not modified or repealed in any manner. The provision is not limited (as argued by appellee) and applies to all guardianships under the Act. Similarly, in section 5—11(2) of the Juvenile Court Act it is provided "[w]henever the court finds that the best interests of the minor and the public no longer require the wardship of the court, the court shall order the wardship terminated and all proceedings under this Act respecting that minor finally closed and discharged. The court may at the same time continue or terminate any custodianship or guardianship theretofore ordered but such termination must be made in compliance with Section 5—8."

It is obvious that the power to designate a guardian with power to consent to adoption was in the Act at the time of the decision in cases such as *In re Ramelow* (3d Dist. 1954), 3 Ill. App. 2d 190, 121 N.E.2d 41. As a result, the giving of consent by the guardian to an adoption, could effectively terminate all parental rights of every kind and nature. The courts, in cases such as *Ramelow*, saw, what is apparent from the Juvenile Court Act itself, that the wardship of the court, in conjunction with the appointment of the guardian with power to consent to adoption, is a continuing one and is to be exercised exclusively in the best interests of the child or children involved.

Nowhere in the Juvenile Court Act is there a specific provision to the effect that an order or decree by the circuit court finding a parent unfit and designating a guardian with power to consent to adoption of a child, would deny to the parent the right to file a petition for modification of such order if it is in the best interests of the child. The language implied in

the act preceding the current act also effectively operated, as judicially determined, so that the order empowering the guardian to consent to adoption would terminate parental rights as respects the minor. Also, nothing in the current act in any manner modifies the provisions of section 5—8(3), which provides that the minor or any person interested in the minor, may apply to the court for a change in custody of the minor and the appointment of a new custodian or guardian of the person or for "restoration of the minor to the custody of his parents or former guardian or custodian." Similarly, the provision of the Act contained in section 5—11(2), which provides that whenever the court finds that the best interests of the minor and the public no longer require the wardship of the court, the court shall order the wardship terminated and all proceedings under the Juvenile Court Act respecting the minor finally closed and discharged. As a matter of fact, in subparagraph 5—11(3), it is provided that the wardship of the minor and any custodianship or guardianship respecting him under the Act automatically terminate when he attains legal age.

It is, therefore, apparent that there is no express or specific language which states that the order of the circuit court entered under the terms of the Juvenile Court Act, which finds the parent unfit and appoints a guardian with power to consent to adoption, brings down an "iron curtain" so that the court, the parents and the children are helpless to seek modification or change of such order, even where its continuation is not in the best interests of the children. It is conceivable that, in many cases where such an order is entered, the best interests of the minor may require modification or termination of such an order. To interpret the language of section 5—9 as finding that there cannot be a subsequent right to petition the court for a modification of the order in the best interests of the children, prior to adoption proceedings, is not based on any reasonable interpretation of the statutory language which has been employed. The Juvenile Court Act itself establishes that the children are, and remain, wards of the court, and that the guiding principle to be employed by the court at all times and in all procedures affecting the children is to see to the best interests of the children at all times. Nowhere is there any provision which states that the court may not give consideration to a petition which is filed by a parent or parents asserting facts showing a change to be in the best interests of the children. No such Draconian decree was mandated by the legislature so far as the statutory provisions indicate. Under section 5—8(3) the minor or any person interested in the minor could apply to the court for appointment of a new guardian or restoration of custody of the minor to his parents. The parent can certainly be classified as a "person interested in the minor."

I recognize and understand the argument made by the appellee which emphasizes a desire for orderly adoption procedures. I am in accord with

this objection. In *In re Ramelow* the court had stated that a petition for restoration of parental rights, asserted to be in the best interests of the children, must come before the petition for adoption is filed. I not only agree with this analysis but believe that it would be reasonable for the trial court to state that such petition of a parent must come before the child is placed with persons specifically for adoption. Normally the best interests of the child could permit the court to find that a petition for restoration of parental rights, would not then be in the best interests of the child.

I have noted, from our review of cases in this court, that when children are placed in foster care, following entry of an order appointing a guardian with power to consent to adoption, some children have maintained interest in the parents and have expressed, in some cases, a desire to return to the parents. It can readily be seen that an order based upon a temporary situation with respect to parental fitness could be corrected so that the best interests of the children might very well be that the prior order finding the parents unfit and granting to an appointed guardian, power to consent to adoption, would be vacated and the children restored to the parents. I have discussed the application of the statutory provisions in the light of the best interests of the children, for the reason that I believe that an arbitrary interpretation of the section under consideration would produce results not in the best interests of the children and would not necessarily operate as an aid to successful adoption. Anyone who is experienced in the field of adoption knows that children past the infant stage are usually not the most sought after for adoption, and the large numbers of children in orphanages or in custodial care who have passed the infant stage, but have not been adopted, can clearly attest to the need for intelligent and considerate supervision by the court. A decree entered under section 5—9 would imply that the trial court is infallible and that a restoration of parental custody, even if in the best interests of the children, can never be considered thereafter. Such children, in such case, would truly be left "in limbo" during their minority.

I believe it is the policy of our State, as expressed in the Juvenile Court Act, not only to encourage adoptions, but also, as basic policy, as expressed by the courts and the legislation in the Juvenile Court Act itself, to require that the courts always act in a manner which is in the best interests of the children, in our procedures under the Juvenile Court Act and in the interpretation of the provisions thereof.

I understand the concern of the trial court, as expressed in its observation that there be a finality in procedures under the Juvenile Court Act. I agree that this is desirable, but I do not believe it can be accomplished by legislative fiat. Where human interrelationships of the

nature involved are to be considered, I believe that the only reasonable procedure is to permit the trial court, in each case, to determine what is in the best interests of the children. Where a child is under wardship of the court, the court's responsibility for protecting the best interests of the child, should extend until adoption or so long as required during the wardship of the child. .

It is clear also that when adoption procedures are in process, and certainly when the petition to adopt is filed, dispositions encouraging adoptions which would be in the best interests of the children, should be adhered to, and that a petitioner seeking to then request that a modification be made as to the children, could then be denied such request, if the court finds that it is then contrary to the best interests of the children.

In the instant case, the two boys who were the subject of the proceeding, were respectively 7 and 5 years of age at the time of the original order. They are now apparently 12 and 10 years of age, respectively, and have been in foster care of the proposed adoptive parents for approximately five years. It also appears from the record and statements of counsel for the appellee that adoption procedures are being undertaken by the foster parents. It is stated expressly in the record, by counsel for appellee, that the foster parents, seeking adoption with approval of the guardian, have delayed filing of the adoption petition only because appellee has requested that such adoption petition be delayed until the instant appeal is concluded. I note, also, that the trial court, in the original proceeding, as noted from our prior opinion involving the Workman wards, actually conducted a hearing on a petition filed by the mother of the boys, and that the trial court, as a result of that hearing, determined that there was not a showing sufficient to establish that a change in the order of the trial court with respect to the wards was in the best interests of the wards. We affirmed that determination as being within the power of the trial court and as being consistent with the record in that case.

In the cause now on appeal, the amended petition alleges that the petitioner, who is the mother of the children, is steadily employed and has been remarried now for a period of two years, and simply asserts, without any other supporting facts, that a modification of the original order of the court, with accompanying restoration of the natural mother's rights as parent, would be in the best interests of the children. The trial court, could well have determined, from an examination of the amended petition, that there were not adequate factual allegations in the petition to establish that a modification of the order entered by the court as to wardship of the children, was not now in the best interests of the children, notably, in view of the imminent adoption proceeding, the five years of

foster care and the only factual allegations of the petitioner in this case. On the record in this case, therefore, I believe that the trial court could properly have determined that the petition should be denied as not now disclosing sufficient facts to call for the requested relief. For the reasons stated, therefore, I believe that the denial of the petition filed by petitioner Cynthia Gillion, for restoration of her parental rights in the best interests of the wards and for incidental relief, was proper.

I agree with the disposition in the majority opinion of the issues raised as to section 72 of the Civil Practice Act and as to the habeas corpus issue.

I have written extensively in the dissent as to the majority opinion's disposition of the first issue, for the reason that it may lead to very undesirable and improper results in many cases. I, therefore, believe that consideration of this issue by the supreme court would be very helpful in eliminating potential confusion on the issue.