2020 IL App (1st) 191007-U

No. 1-19-1007

Fourth Division
September 30, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | |
| | ) | |
| | ) | Appeal from the Circuit Court |
| CAMILLE WINSTON, | ) | of Cook County. |
| | ) | |
| Petitioner-Appellant, | ) | No. 16 D6 30434 |
| | ) | |
| and | ) | The Honorable |
| | ) | Bonita Coleman, |
| TRUMANE HAMPTON, | ) | Judge Presiding. |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

_____

PRESIDING JUSTICE GORDON delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1      *Held:* (1) The trial court's temporary order allocating parental responsibilities is not properly before this court, as the appellant failed to file a petition for leave to appeal the order; even if it was properly before this court, any review would be moot, as the temporary order was superseded by the trial court's final judgment of allocation of parental responsibilities. (2) The final judgment of allocation of parental responsibilities is not against the manifest weight of the evidence, where the trial court found that it was in the best interest of the minor to adopt the parties' agreed parenting plan, and there is nothing in the record to support any claims of error.

¶ 2   The instant *pro se* appeal arises from proceedings related to the dissolution of the marriage of petitioner Camille Winston and respondent Trumane Hampton. According to Winston, during a hearing on an order considering visitation, the trial court *sua sponte* entered an order granting primary parenting time to Hampton, when such relief was never requested, which Winston claims renders the order void. Additionally, Winston challenges a later judgment allocating parental responsibilities, which she claims was against the manifest weight of the evidence. For the reasons that follow, we affirm.

¶ 3                                    BACKGROUND

¶ 4   Winston and Hampton were married in 2013. On May 2, 2016, Winston filed a petition for dissolution of marriage, in which she requested that she be awarded all decision-making responsibility for their daughter K.H., who was two years old at the time. Winston also alleged in the petition that an order of protection had been entered involving the parties and K.H. concerning domestic violence; the order of protection does not appear in the record on appeal, but Hampton admitted the existence of the order of protection in his answer to the petition. In his answer, Hampton also contested the paternity of K.H., and admitted the allegations in the petition in which Winston alleged that it would be in the best interests of K.H. that Winston have all decision-making responsibility for her. The court ordered paternity testing; an order regarding paternity does not appear in the record on appeal, but the parties' subsequent actions concerning allocation of parenting time suggest that the issue of paternity has been resolved.

¶ 5   On July 27, 2017, the trial court entered an order setting forth a temporary parenting schedule, in which Hampton was given parenting time every Wednesday evening, every other Saturday, and every other Sunday. On September 20, 2017, Hampton filed a petition for rule to show cause why Winston should not be held in indirect civil contempt, alleging that he had

been denied parenting time with K.H. in violation of the court's July 27, 2017, order. Hampton alleged that his counsel had attempted to reach out to Winston and her counsel to resolve the situation, but all efforts had been fruitless. Hampton sought the following relief:

"A. That this Honorable Court enter a Rule to Show Cause against [Winston] to show cause, if any, why she should not be held in contempt of this Court for failure to comply with said Order of this Court.

B. That this Court enter an Order that sanctions be imposed on [Winston] for her contumacious conduct in refusing and failing to comply with the Order entered by this Court and for her abuse of allocated parenting time.

C. That this Court enter an order assessing attorney's fees of [Hampton] against [Winston] for the preparation and presentation of this matter;

D. For such other and further relief as Equity deems just."

On September 25, 2017, the trial court set the petition for rule to show cause for hearing on November 8, 2017, and ordered "[a]ll parties to appear."

¶ 6       On November 8, 2017, the trial court entered an order on the petition for rule to show cause. The order provided, in full:

"This matter coming before the Court on status on prove-up and hearing on Respondent's Rule to Show Cause for mom's failure to allow Respondent parenting time, both Counsels being present along w/ the parties (however, petitioner leaving court before case was re-called) and the Court being fully advised in the premises,

IT IS HEREBY ORDERED:

(1) That as of this date, residential placement of the minor child shall be with the Father (Respondent) until further order of the court.

3

(2) That return of the minor child to mom's custody will *NOT* be deemed an emergency.

(3) Mom (petitioner) shall tender her full address to counsel, in order for Respondent to retrieve the minor child.

(4) Father's (Respondent's) child support is abated until further order of the court.

(5) That Respondent's Rule to Show Cause is entered and continued to January 10, 2018 @ 9:30 am." (Emphasis in original.)

¶ 7        On November 9, 2017, Winston filed a *pro se* motion for "emergency custody." In the motion, Winston claimed that she believed that K.H. would be in "immediate danger" if left in the custody of Hampton, who she claimed had been violent with both Winston and K.H. in the past. Winston claimed that Hampton had a substance abuse problem with alcohol and had lost his home, and that he had previously been convicted of child endangerment for leaving K.H. in the home unattended when she was six weeks old.

¶ 8        On November 13, 2017, Winston filed a *pro se* motion to vacate, in which she requested that the court's November 8, 2017, order be vacated. Winston claimed that she was present at the hearing, but that the case was passed and that, by the time it was re-called, she had to leave to pick her children[1] up from school.

¶ 9        On November 14, 2017, the trial court entered an order on Winston's emergency motion, finding that "Petitioner's Motion does *NOT* constitute an Emergency (per the Judge's previous order entered on 11/8/17)" (emphasis in original) and entering and continuing the motion to

---

[1] It appears from the record on appeal that Winston has two children. However, K.H. is the only child she shares with Hampton.

the next court date on January 10, 2018. The court order further provided that "Respondent will have possession of minor until further order of the court."

¶ 10    On December 1, 2017, Winston, represented by new counsel, filed another motion to vacate the November 8, 2017, order. In the motion, Winston claimed that Hampton had not, to date, filed any petition for an allocation of parental responsibilities, nor had he filed any other pleading requesting to be the residential parent of K.H. Notwithstanding the fact that such relief had never been requested, the trial court's November 8 order gave Hampton possession of K.H. At the time of the court's ruling, Winston was not in court, as she had to leave to pick up her children from school. The matter had been passed in order to allow the parties to discuss alternate pick-up and drop-off locations for Hampton's parenting time, but Winston was forced to leave prior to those arrangements being finalized. It was unclear why Winston's counsel was not present when the case was re-called, and Winston had mistakenly assumed that her counsel would continue to represent her in her absence. Prior to the November 8 order, Winston had been the primary caregiver for K.H. since her birth, and the court's order did not explain the basis for naming Hampton as the residential parent, nor did it contain any consideration of the factors set fact in the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/602.7 (West 2016)). The order also did not grant Winston any parenting time with K.H., and Winston had been able to arrange only limited parenting time with Hampton.

¶ 11    Winston further claimed that Hampton was living in a two-bedroom apartment with six children and four adults, and that it was unclear where K.H. was sleeping. Winston also pointed to a documented history of domestic violence between the parties, with Hampton convicted of domestic violence and spending 90 days in jail after threatening Winston with a firearm. Finally, Hampton had previously been charged with endangering the life of a child under 18

for his treatment of K.H. Accordingly, Winston claimed that it was not in the best interest of K.H. to be placed in the residential care of Hampton, and requested that the November 8, 2017, order be vacated.

¶ 12    On December 19, 2017, the trial court entered an order granting Hampton 28 days to respond to Winston's motion to vacate. The order also granted Winston parenting time on Christmas Eve, as well as on alternating Fridays and Saturdays. The court also entered a separate order referring the parties to mediation concerning allocation of parenting time and parental responsibilities. On January 12, 2018, the trial court entered an agreed order granting Winston additional parenting time on alternating Wednesday afternoons.

¶ 13    On March 21, 2018, the trial court entered an order on Winston's motion to vacate the November 8, 2017, order, which provided:

> "(1) The Court finds that the [Motion] to Vacate would require a finding of the best interests of the parties' minor child, and as such would need a GAL appointed to assist the court with that determination.
>
> (2) The appointment of a GAL is hereby continued as the parties reached a full agreement as to parenting time. Said [agreement] is as follows
>
> > (a) Respondent shall have parenting time every Sunday at 2 pm until 2 pm on Wednesdays.
> >
> > (b) Petitioner shall have parenting time every Wednesday at 2 pm until Saturday at 10 am.
> >
> > (c) The parties shall alternate Saturday overnights.

(d) The above-referenced schedule shall commence March 21, 2018. Petitioner shall have the overnight on March 24, 2018. The pickup/dropoff location shall stay as previously ordered.

(3) This matter is hereby continued for entry of allocation or appointment of a GAL to May 14, 2018 @ 9:30 am.

(4) Respondent's pending petition is hereby entered and continued."

¶ 14    On May 14, 2018, the trial court entered an order appointing a guardian *ad litem* for K.H. with respect to the issues of an allocation of parental rights and responsibilities and for parenting time.

¶ 15    On July 23, 2018, Winston filed a petition for an order of protection on behalf of herself and K.H., alleging that during the exchange of K.H. on July 18, Hampton became verbally abusive toward Winston, including threatening to beat her. Winston alleged that she was fearful of Hampton, especially given his former history of verbal harassment and physical abuse. Hearing on the order of protection was set for October 17, 2018, but no disposition of the order appears in the record on appeal.

¶ 16    On December 19, 2018, Hampton filed a counterpetition for dissolution of marriage, in which he alleged that it would be in the best interest of K.H. for both parents to share joint decision-making responsibility. Hampton's counterpetition sought residential custody of K.H., with Winston having "reasonable visitation."

¶ 17    On April 29, 2019, the trial court entered a "Final Judgment Regarding Allocation of Parental Responsibilities, Allocation of Parenting Time & Agreed Parenting Plan," which found that the parties had entered into an agreed parenting plan, which included an allocation of parental responsibilities and allocation of parenting time, and which found that it was in the

best interests of K.H. for the agreed parenting plan to be adopted and approved by the court. The court found that the plan "is reasonable and in the best interests of the minor child and such Parenting Plan is not unconscionable."

¶ 18    The parenting plan provided that "the parties hereto agree that the following allocation of decision-making and significant decision-making between the parties is in the best interests of their minor child. Therefore, the parties shall implement and employ the decision-making processes and mechanisms set forth below." The plan provided that both parties would share responsibility for all major decisions relating to K.H.'s education, but that Hampton's residential address would be K.H.'s residential address for school enrollment purposes. Hampton was also designated as the parent with the majority of the parenting time, and was designated K.H.'s custodian for any purposes that required the designation of a custodian. Winston was entitled to parenting time on alternating weekends and on alternating Wednesday nights.[2] The agreement also provided for alternating holidays and vacation time.

¶ 19    On May 13, 2019, Winston filed a *pro se* notice of appeal, in which she stated that she was appealing the trial court's April 29, 2019, order and seeking "reversal of final judgement of allocation of parental responsibilities[,] allocation of parenting time[,] and agreed parenting plan." This appeal follows.

¶ 20                                    ANALYSIS

¶ 21    On appeal, Winston challenges both the November 8, 2017, order in which the court temporarily ordered residential placement of K.H. to be with Hampton, and the April 29, 2019, order entering the judgment of allocation of parental responsibilities. We note that Hampton

_____

[2] The order stated that the provision concerning alternating Wednesdays was by order of the court, not by agreement.

did not file a brief on appeal, so we take the appeal on Winston's *pro se* brief and the record alone. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). We also note that, although we granted Hampton leave to file a supporting record containing transcripts of several court hearings, no such supporting record was ever filed, so the record on appeal consists of the common-law record alone. The lack of transcripts means that we are unable to know exactly what occurred during any of the court hearings, or what led to the entry of certain orders. Our supreme court has instructed that, where the record is not sufficiently complete to support a claim of error, "it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Thus, if Winston's claims rely on facts not apparent from the documents contained in the common-law record, we must presume that the trial court acted appropriately. *Foutch*, 99 Ill. 2d at 392 ("Any doubts which may arise from the incompleteness of the record will be resolved against the appellant.").

¶ 22    We first consider our jurisdiction over Winston's appeal. It is our duty to determine whether we have jurisdiction, regardless of whether the issue is raised by the parties. *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009) ("A reviewing court must ascertain its jurisdiction before proceeding in a cause of action, regardless of whether either party has raised the issue."); *A.M. Realty Western L.L.C. v. MSMC Realty, L.L.C.*, 2016 IL App (1st) 151087, ¶ 67 ("Although neither party raises the issue of jurisdiction, an appellate court has an independent duty to consider whether or not it has jurisdiction to hear an appeal."). The question of whether we have jurisdiction over an appeal presents a question of law, which we review *de novo*. *In re Marriage of Demaret*, 2012 IL App (1st) 111916, ¶ 25; *In re Marriage of Gutman*, 232 Ill. 2d 145, 150 (2008). *De novo* consideration means we

perform the same analysis that a trial judge would perform. *XL Specialty Insurance Co. v. Performance Aircraft Leasing, Inc.*, 2019 IL App (1st) 181031, ¶ 62.

¶ 23    "Appellate jurisdiction is confined to reviewing final judgments unless the order to be reviewed comes within one of the exceptions for interlocutory orders specified by the supreme court." *Board of Trustees of Community College District No. 508 v. Rosewell*, 262 Ill. App. 3d 938, 950 (1992). In the case at bar, we have jurisdiction to review the trial court's April 29, 2019, order under Illinois Supreme Court Rule 304(b)(6) (eff. Mar. 8, 2016). Under Rule 304(b)(6), "[a] custody or allocation of parental responsibilities judgment or modification of such judgment entered pursuant to the [Marriage Act]" is immediately appealable. Ill. S. Ct. R. 304(b)(6) (eff. Mar. 8, 2016). Since the trial court's April 29, 2019, order was a final judgment of allocation of parental responsibilities, we have jurisdiction to consider it.

¶ 24    However, the trial court's November 8, 2017, order is not such an order. Instead, it appears that the trial court *sua sponte* ordered a temporary allocation of parental responsibilities to Hampton during a hearing on Hampton's petition for rule to show cause. The only basis we have discovered for appealing such an order would be found in Illinois Supreme Court Rule 306(a)(5) (eff. Oct. 1, 2019), which provides for permissive appeals "from interlocutory orders affecting the care and custody of or the allocation of parental responsibilities for unemancipated minors or the relocation (formerly known as removal) of unemancipated minors, if the appeal of such orders is not otherwise specifically provided for elsewhere in these rules." See *In re Marriage of Kostusik*, 361 Ill. App. 3d 103, 109 (2005) ("Rule 305(a)(5) is the vehicle by which to seek review of interlocutory child custody orders"). However, appeals under Rule 306(a)(5) require the appellant to first file a petition for review with the

appellate court, which the court then grants or denies. Ill. S. Ct. R. 306(b)(1) (eff. Oct. 1, 2019). This procedure was not followed in the case at bar.

¶ 25   We note that, in certain cases, courts have been willing to recharacterize appeals as petitions to leave for appeal under Rule 306(a)(5) when the parties failed to follow the proper procedures. See *Kostusik*, 361 Ill. App. 3d at 112-13 (collecting cases). However, those cases involved circumstances "where the parties seeking review have relied on erroneous law or erroneous cases in failing to evoke Rule 306(a)(5)." *Kostusik*, 361 Ill. App. 3d at 112. No such circumstance exists here. Moreover, Winston's notice of appeal does not identify the November 8, 2017, order as one that she is appealing, further distinguishing it from cases in which courts have recharacterized a notice of appeal as a petition for leave to appeal under Rule 306(a)(5). [3] Accordingly, we cannot find that we have jurisdiction over the November 8, 2017, order under Rule 306(a)(5).

¶ 26   There is one last possibility for appellate jurisdiction, however, even if Winston has not properly filed a petition for leave to appeal the November 8, 2017, order. While, under Illinois Supreme Court Rule 303(b)(2) (eff. July 1, 2017), a notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court," our supreme court has made clear that a notice of appeal is to be construed liberally. See *People v. Smith*, 228 Ill. 2d 95, 104 (2008). "The notice of appeal should be considered as a whole and will be deemed sufficient to confer jurisdiction on an appellate court when it fairly and adequately sets out the judgment complained of and the relief sought, thus advising the

---

[3] We also note that, while Winston filed a *pro se* notice of appeal, and is proceeding *pro se* on appeal, she was represented by counsel during the initial stages of the instant appeal, from May 20, 2019, until counsel was given leave to withdraw on August 28, 2019. Accordingly, if any error in the jurisdictional basis for the instant appeal was due to Winston's status as a *pro se* appellant, such error could have been remedied by counsel.

successful litigant of the nature of the appeal." *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 176 (2011). " 'Where the deficiency in notice is one of form, rather than substance, and the appellee is not prejudiced, the failure to comply strictly with the form of notice is not fatal.' " *Smith*, 228 Ill. 2d at 105 (quoting *Lang v. Consumers Insurance Service, Inc.*, 222 Ill. App. 3d 226, 230 (1991)). Thus, our supreme court has long held that a judgment that is not specified in the notice of appeal is nonetheless reviewable "if it is a 'step in the procedural progression leading' to the judgment specified in the notice of appeal." *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 435 (1979) (quoting *Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252, 1254 (3d Cir. 1977)); see *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 23 (finding a denial of petition for substitution of judge was a "step in the procedural progression leading to the final judgment" specified in the notice of appeal).

¶ 27     In the case at bar, we cannot find that the November 8, 2017, order was a step in the procedural progression leading to the entry of the April 29, 2019, judgment. The court's temporary order, even if improperly entered, would not have an effect on the final judgment allocating parental responsibilities. See *Jiffy Lube International, Inc. v. Agarwal*, 277 Ill. App. 3d 722, 726 (1996) (finding that "[w]here an order has the possibility of rendering all subsequent orders void, then we find that such an order is a step in the 'procedural progression' leading to the order specified in the notice of appeal"). Any findings made in the temporary order are not binding on the trial court, and it was required to conduct a hearing regarding the final allocation of parental responsibilities *de novo*, considering all of the factors that related to the best interests of the child. *In re Marriage of Fields*, 283 Ill. App. 3d 894, 902, 904 (1996).

¶ 28     Furthermore, even if the November 8, 2017, order could be construed as a step in the procedural progression leading to the entry of the April 29, 2019, judgment, the nature of the

November 8 order would render any review of it moot. "A temporary order—by its very nature—is *provisional* in character and continues only during the pendency of the action." (Emphasis in original.) *Fields*, 283 Ill. App. 3d at 901. Accordingly, when the matter that is the subject of the temporary order comes before the court for a hearing on the merits, "the temporary order has fulfilled its purpose and is superseded by the final—or permanent—order." *Fields*, 283 Ill. App. 3d at 901; *Kostusik*, 361 Ill. App. 3d at 108 ("when the permanent custody order is entered, the temporary custody order is superseded"). "Once the trial court enters the final order, an assumption arises that the court has thereby adjusted for any inequity in its temporary orders." *Fields*, 283 Ill. App. 3d at 901. In the case at bar, once the trial court entered the April 29, 2019, final judgment of allocation of parental responsibilities, the November 8, 2017, order was superseded and there was no longer any relief that could be afforded Winston. See *Maroney v. Maroney*, 109 Ill. App. 3d 162, 167 (1969) ("The question of the propriety of the temporary order is now moot. The temporary order has been superseded by the permanent order entered by the court ***. [Citation.] The defendant now has custody by virtue of this permanent order and not by virtue of the temporary order."); *Moseley v. Goldstone*, 89 Ill. App. 3d 360, 365-66 (1980) ("[T]he issue of visitation during the pendency of the action is moot because nothing can be done to remedy the denial of visitation for a time period which has already passed; consequently, no useful purpose can be served in considering the denial of the specific visitation requests."). Consequently, the only order for which Winston may seek relief is the April 29, 2019, judgment of allocation of parental responsibilities.

¶ 29   We turn, then, to Winston's argument concerning that judgment. As noted, on April 29, 2019, the trial court entered a "Final Judgment Regarding Allocation of Parental Responsibilities, Allocation of Parenting Time & Agreed Parenting Plan," which found that

the parties had entered into an agreed parenting plan, which included an allocation of parental responsibilities and allocation of parenting time, and which found that it was in the best interests of K.H. for the agreed parenting plan to be adopted and approved by the court. The court found that the plan "is reasonable and in the best interests of the minor child and such Parenting Plan is not unconscionable." On appeal, Winston claims that the judgment is against the manifest weight of the evidence.

¶ 30    "[C]ustody proceedings under the [Marriage Act] are guided by the overriding lodestar of the best interests of the child or children involved." *In re A.W.J.*, 197 Ill. 2d 492, 497-98 (2001). When deciding issues pertaining to allocation of parental responsibilities, the trial court has broad discretion, and its judgment is afforded great deference because the trial court is in a superior position to judge the credibility of witnesses and determine the best interests of the child. *In re Marriage of Debra N.*, 2013 IL App (1st) 122145, ¶ 45. Accordingly, we will not reverse a trial court's judgment on appeal unless it is against the manifest weight of the evidence. *In re Marriage of Iqbal*, 2014 IL App (2d) 131306, ¶ 55. "A judgment is against the manifest weight of the evidence only when the opposite conclusion is clearly apparent." *In re Parentage of J.W.*, 2013 IL 114817, ¶ 55. "In determining whether a judgment is contrary to the manifest weight of the evidence, the reviewing court views the evidence in the light most favorable to the appellee. [Citation.] Where the evidence permits multiple reasonable inferences, the reviewing court will accept those inferences that support the court's order. [Citation.]" *In re Marriage of Bates*, 212 Ill. 2d 489, 516 (2004).

¶ 31    Under section 602.7 of the Marriage Act, "[u]nless the parents present a mutually agreed written parenting plan and that plan is approved by the court, the court shall allocate parenting time." 750 ILCS 5/602.7 (West 2018). In the case at bar, the judgment entered by the court

14

shows that the parties did, in fact, enter into an agreed parenting plan.[4] When the parties have agreed on a parenting plan, section 602.10(d) of the Marriage Act provides that "[t]he agreement is binding upon the court unless it finds, after considering the circumstances of the parties and any other relevant evidence produced by the parties, that the agreement is not in the best interests of the child." 750 ILCS 5/602.10(d) (West 2018). In making a best-interests determination, section 602.7(b) provides that the court "shall consider all relevant factors," including a list of 17 separate factors set forth in the statute. 750 ILCS 5/602.7(b) (West 2018).

¶ 32        In the case at bar, Winston claims that the trial court failed to properly weigh these factors, especially the wishes of the child, the child's needs, and the child's adjustment to her home, school, or community. See 750 ILCS 6/602.7(b)(2), (6), (8) (West 2018). Winston also claims that there was no home study conducted and that the guardian *ad litem* did not properly represent K.H.'s best interests. However, there is nothing contained in the record on appeal to support her claims. The judgment entered by the trial court expressly provides that it had considered the relevant factors set forth in section 602.7 of the Marriage Act and that the court found that it would be in the best interest of K.H. that the agreed parenting plan be adopted by the court. Accordingly, under section 602.10(d), the court properly entered a judgment allocating parental responsibilities pursuant to that plan. To the extent that Winston claims that the trial court or guardian *ad litem* made comments during court hearings that show that the best interest determination was against the manifest weight of the evidence, the lack of any transcripts of those hearings proves fatal to Winston's claims of error. As noted, as the

---

[4] We note that Winston claims on appeal that she did not agree to the parenting plan. However, the parenting plan bears Winston's signature, and the trial court's judgment specifically states that the parenting plan was agreed to by the parties (other than a single provision providing for Winston's parenting time on alternating Wednesdays). We find no support for the claim that the agreed parenting plan was not, in fact, agreed to.

appellant, Winston bears the burden of providing a sufficiently complete record of the proceedings at trial to support her claims of error, and in the absence of such a record on appeal, "it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch*, 99 Ill. 2d at 391-92. Here, in the absence of any evidence showing otherwise, we must presume that the trial court's April 29, 2019, judgment of allocation of parental responsibilities was proper. Accordingly, we affirm the judgment of the trial court.

¶ 33                                    CONCLUSION

¶ 34        The trial court's November 8, 2017, order is not properly before this court on appeal, as Winston failed to file a petition for leave to appeal from that order, as required. However, even if it had been properly presented, any review of that order would be moot, as it was a temporary order that was superseded by the trial court's final judgment of allocation of parental responsibilities. The trial court's final judgment, entered April 29, 2019, is not against the manifest weight of the evidence, where the order provides that the court considered all of the relevant best-interest factors and, given the lack of transcripts, there is nothing in the record on appeal to support any claims of error.

¶ 35        Affirmed.